ATTORNEYS FOR APPELLANTS
Charles L. Berger
Jennifer L. Ulrich-Keppler
Evansville, Indiana

ATTORNEYS FOR APPELLEES
Robert W. Rock
David L. Jones
Evansville, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA ASSOCIATION OF CITIES
AND TOWNS AND INDIANA MUNICIPAL
LAWYERS ASSOCIATION
Jo Angela Woods
Indianapolis, Indiana

# In the
# Indiana Supreme Court

No. 82S01-0410-CV-441

FRATERNAL ORDER OF POLICE,
LODGE #73, ET AL.

*Appellants (Plaintiffs below),*

v.

CITY OF EVANSVILLE, INDIANA, ET AL.

*Appellees (Defendants below).*

Appeal from the Vanderburgh Circuit Court, No. 82C01-9905-CP-202
The Honorable Carl A. Heldt, Judge

On Petition To Transfer from the Indiana Court of Appeals, No. 82A01-0311-CV-442

**June 21, 2005**

**Boehm, Justice.**

We hold that the contributions and benefits of first class patrolmen under the pension and disability statute are to be calculated based on the base pay available to all officers of the same rank, notwithstanding the fact that some, but not all, officers in that rank receive higher pay under the collective bargaining agreement for assignments to specified units.

**Facts and Procedural History**

The Fraternal Order of Police Lodge 73 and three retired officers of the Evansville Police Department brought this case as a class action against the City of Evansville and the Indiana Public Employees Retirement Fund ("PERF").[1] Their claim is for additional retirement benefits for the three named plaintiffs and all other first class patrolmen. Police officers' pension benefits are calculated using the "monthly salary of a first class patrolman." Ind. Code § 36-8-8-11 (2004).[2] The applicable statute defines the "salary of a first class patrolman or firefighter" as "the base salary of a patrolman or firefighter plus all longevity increases." I.C. § 36-8-1-11(a). The collective bargaining agreement between Evansville and its police officers contains an "Equal Pay for Equal Work" provision that requires paying a corporal's salary to first class patrolmen assigned to the Criminal Investigation Division (CID). The salary of a corporal is eight percent higher than that of a first class patrolman. The plaintiffs contend that all first class patrolmen's pension benefits should be calculated using the "base salary" of the highest paid first class patrolman, a corporal's salary, because some first class patrolmen serve in the CID and receive corporal's pay. Evansville disagreed, claiming that the additional eight percent paid to first class patrolmen serving in the CID is "incentive pay" that is excluded from "base salary" by Indiana Code section 36-8-1-11(a).

The trial court granted the defendants' motion for summary judgment on every claim raised in the plaintiffs' complaint. The Court of Appeals reversed, agreeing with the plaintiffs that under the statute pension benefits are to be based on the highest salary paid to any first class patrolman. Fraternal Order of Police v. City of Evansville, 809 N.E.2d 470, 472 (Ind. Ct. App. 2004). In the case of the Evansville police, these were the patrolmen in the CID receiving a corporal's salary. We granted transfer. Fraternal Order of Police v. City of Evansville, 822 N.E.2d 977 (Ind. 2004). The Indiana Association of Cities and Towns and Indiana Municipal Lawyers Association (collectively, "amici") filed an Amicus Curiae brief aligned with the defendants.

---

[1] The plaintiffs sought to represent a class of all patrolmen who have been denied pension benefits as provided in the statute. This definition of the class does not on its face limit the claims to those asserted in the complaint. The trial court granted summary judgment in favor of the defendants on the merits without addressing the propriety of a class action or defining the class.

[2] Both parties agree that the rights of the plaintiffs are set by the statutes applicable to the "1977 Police Officers' and Firefighters' Pension and Disability Fund." I.C. §§ 36-8-8-1 to -22. No issues are raised under the predecessor statute governing pension funds.

## Standard of Review

On appeal, the standard of review of a summary judgment ruling is the same as that used in the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); Shell Oil Co. v. Lovold Co., 705 N.E.2d 981, 983-84 (Ind. 1998). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. Colonial Penn Ins. Co. v. Guzorek, 690 N.E.2d 664, 667 (Ind. 1997). The review of a summary judgment motion is limited to those materials designated to the trial court. T.R. 56(H); Rosi v. Bus. Furniture Corp., 615 N.E.2d 431, 434 (Ind. 1993). We must carefully review decisions on summary judgment motions to ensure that the parties are not improperly denied their day in court. Estate of Shebel v. Yaskawa Elec. Am., Inc., 713 N.E.2d 275, 277 (Ind. 1999).

## "Base Salary"

The parties remind us of principles of statutory construction and, as parties often do, cite opposing maxims. The plaintiffs point out that pension laws should be liberally construed in favor of the intended beneficiaries. See Schock v. Chappell, 231 Ind. 480, 484, 109 N.E.2d 423, 424 (1952); State ex rel. Clemens v. Kern, 215 Ind. 515, 523, 20 N.E.2d 514 (1939). The defendants reply that any construction of the pension laws must be consistent with the plain meaning and legislative purpose of the statutes. U.S. Sav. Fund & Inv. Co. v. Harris, 142 Ind. 226, 231, 40 N.E. 1072, 1073 (1895). In this case we believe the defendants have properly construed the law.

The plaintiffs rely on two cases for their contention that "base salary" is the salary of the highest paid first class patrolman, i.e. the first class patrolman working in the CID and paid a corporal's salary. Both were decided under earlier versions of the pension statutes. In Kilfoil v. Johnson, 135 Ind. App. 14, 191 N.E.2d 321 (1963), retired firefighters and the widows of retired firefighters sued the City of Vincennes in an attempt to have longevity pay (pay that is based upon the number of years of service) included in the calculation of a first class fireman's wages for the purpose of determining pensions. At that time, the relevant statute stated that the pension of a first class fireman was to be "thirty [30] per cent of the monthly wage received by a *fully paid* first class fireman." Ind. Code. Ann. § 48-6528(c) (Bobbs-Merrill 1950) (emphasis added).

3

The statute contained no definition of "wage." The retirees contended that longevity pay should be included in the pension calculations. The Court of Appeals agreed that a "fully paid first class fireman" was the fireman who received "the highest monthly wage or monthly compensation being paid to any first class fireman working in the same Fire Department and City as himself." Kilfoil, 135 Ind. App. at 19, 191 N.E.2d at 324. This included longevity pay. Similarly, in City of Vincennes v. McCarter, 142 Ind. App. 493, 494, 236 N.E.2d 76, 77 (1968), retired policemen and widows and children of retired policemen sued to require the city to base its calculations on the "actual remuneration received by the highest paid first class patrolman, rather than on the basis of the salary of a first class patrolman, as set by appellant's Common Council." Relying on Kilfoil, the Court of Appeals held "pensions should have been computed on the basis of the highest paid first class patrolman." Id. at 78.

In 1977, the Indiana General Assembly established a new "1977 Police Officers' and Firefighters' Pension and Disability Fund" which combined the pensions of firefighters and police and provided both retirement and disability benefits for police officers and firefighters hired by Indiana municipalities after May 24, 1977.[3] 1977 Ind. Acts 9 §§ 1-2. The 1977 Pension Statute, now codified at Indiana Code chapter 36-8-8, includes a more fully developed actuarial funding requirement with administration by PERF. The trial court concluded that under the 1977 legislation compensation must be paid to all patrolmen in order to be part of a patrolman's "base salary." Eighty-six patrolmen in Evansville's Motor Patrol Division have five or more years of service, but do not receive corporal pay. Thus, "base salary" of a patrolman did not include amounts paid only to those patrolmen who serve in the CID. We agree.

---

[3] The only factual reference in the record to the three named plaintiffs is found in the affidavit of Marvin Guest, Chief of Police for the Evansville Police Department:

John Haller, Charles Patton, and Earl Chapman (collectively "Retirees") are retired members of the [Evansville Police] Department. During their employment with the Department, they participated in the 1925 Police Pension Fund ("1925 Fund"). While employed with the Department, Mr. Chapman converted his pension benefits under the 1925 Fund to the 1977 Police Officers' Pension Fund ("1977 Fund") (the 1925 Fund and the 1977 Fund will be collectively referred to as the "Funds"). As participants in the 1925 Fund, Mr. Haller and Mr. Patton contributed six percent (6%) of the salary of a first-class patrolman to the 1925 Fund. Likewise, Mr. Chapman contributed six percent (6%) of the salary of a first-class patrolman to the Funds. The Retirees receive fifty percent (50%) of the salary of a first-class patrolman with at least twenty (20) years of active duty in pension benefits.

After three years of service, Mr. Chapman was transferred to the CID. The record does not reveal how many years he worked in the CID.

4

The 1977 revision preserved the earlier language providing that pensions are to be based on "the monthly salary of a first class patrolman." I.C. § 36-8-8-11(b). However, the revised statute refined the definition of "salary of a first class patrolman" by explaining that it means "base salary of a patrolman . . . plus all longevity increases." I.C. § 36-8-1-11(a). The revision to the pension statute thus preserved the specific holdings of Kilfoil and McCarter by including longevity pay in the definition of "salary." I.C. § 36-8-1-11. The statute also added a list of items including "incentive pay" that are not included in "base salary."[4] The parties debate whether the incremental pay for first class patrolmen working in the CID is "incentive pay." We believe that a determination of what constitutes "base salary" resolves this case without address-ing whether the additional eight per cent is "incentive pay." In Hilligoss v. LaDow, 174 Ind. App. 520, 368 N.E.2d 1365, 1370 (1977), the Court of Appeals expressly recognized that the "longevity pay cases" did not stand as authority "for the proposition that other forms of compen-sation necessarily constitute salary." The Court of Appeals observed that the underlying goal of construing the pension laws to favor beneficiaries "is not a license to read into the act obligations against the pension trust funds and the taxpayers which the legislature did not intend." City of Ft. Wayne v. Ramsey, 578 N.E.2d 725, 728 (Ind. Ct. App. 1991) (citing Hilligoss, 174 Ind. App. at 528, 368 N.E.2d at 1370). In Lugar v. State, 270 Ind. 45, 48, 383 N.E.2d 287, 290 (1978), this Court approved the reasoning of the Court of Appeals in Hilligoss and held "[n]owhere in the statute is there provided that salary includes anything other than base salary plus longevity pay."

The plaintiffs cite the definition of "base pay" in Black's Law Dictionary 104 (Abridged 6th ed. 1991), as evidence that the term "base salary" includes all wages and excludes only those items listed in the pension statute.[5] The plaintiffs contend that any other interpretation of the term "base salary" would render the statutory exclusions from the definition superfluous. We think the exclusions from "base pay" in Black's and in the statute itself are not exhaustive. No-where does either the dictionary definition or the statute suggest that the specific exclusions are more than merely illustrative of the kinds of things that are not included within base salary. The

---

[4] The statute excludes "remuneration or allowances for fringe benefits, incentive pay, holiday pay, insur-ance, clothing, automobiles, firearms, education, overtime, or compensatory time off." I.C. § 36-8-1-11(a).

[5] That dictionary states "base pay" constitutes "wages, exclusive of overtime, bonuses, etc." This term is not defined in the current edition of Black's Law Dictionary. See Black's Law Dictionary (Garner 8th ed. 2004).

term "base salary" means just that, the salary all patrolmen receive, without enhancement for longevity (which is included in "salary") or any other items (which are not included). Because only some, but not all, first class patrolmen receive the additional eight percent paid to corporals, that amount is not included in the base salary of a first class patrolman.

Our interpretation of this provision is supported by the practical construction given it by the parties, and, according to the amici, by others as well. Base salary determines not only the amount paid to an officer upon retirement, but also the amount an officer contributes to the pension plan while he is working. I.C. § 36-8-8-8(a). According to the amici, for the last twenty or more years many municipalities have used the salary paid to all patrolmen with similar longevity as the annual certified wage and used that wage to compute, collect, and pay contributions. In any case this is true of Evansville. The statute provides that a patrolman or firefighter is to contribute "six percent (6%) of the salary of a first class patrolman or firefighter" to the 1977 Pension Fund. Id. In this case all three named plaintiffs contributed to the pension fund six percent of the salary of a first class patrolman, not six percent of a corporal's salary. Specifically, Mr. Haller and Mr. Patton contributed six percent of their first class patrolman salary to the pension fund. Mr. Chapman also contributed only six percent of the salary of a first class patrolman to the pension fund, even though he was receiving a corporal's salary. The result the plaintiffs seek in this lawsuit is therefore an additional pension benefit for which they and the members of the class they seek to represent made no contribution.

The plaintiffs argue that beneficiaries are entitled to the remuneration that the statute requires, without regard to what the municipality chose to collect. Even if that is correct as a general proposition, we do not agree that the statute dictates that "base pay" means what the plaintiffs claim it does. The practice of both the city collecting and the officers in contributing over many years is merely evidence indicating to the contrary. Obviously, if we agreed with the plaintiffs the city would be not only entitled but also obliged to withhold at the higher rate from all current officers. Such a construction of the pension statute would require Indiana municipalities to collect a percentage of every patrolman's wage calculated on a corporal's salary even though many patrolmen are not receiving the higher wage. Either the officers or the taxpayers would have to bear the burden of the municipalities' past inadequate contributions. We do not think the legislature intended either result.

6

In sum, we believe that the General Assembly's use of the term "base salary" to define "salary of a first class patrolman" indicates its intention that municipalities should calculate, collect, and pay pension benefits from the salary received by all officers of the same rank, regardless of department. The specific statutory exclusions provide further evidence of this intent, but are not an exhaustive list of the items that do not meet the criteria of "base salary." Additional pay given pursuant to the collective bargaining agreement to some first class patrolmen working in the CID does not qualify.

## Conclusion

For the reasons expressed in this opinion, we affirm the trial court's grant of summary judgment to the defendants.

Shepard, C.J., and Dickson, Sullivan, and Rucker, JJ. concur.

7