RUCKER, Justice.
The question presented is whether a statute that prohibits a debtor from "bringling] an action upon a credit agreement" unless it is in writing applies also to a debtor's assertion of an affirmative defense. We conclude it does not.
Facts and Procedural History
In August 1995, Bank One loaned Sees Equipment $500,000. John Thomas Sees ("Sees") and his brother Robert Sees, as officers of Sees Equipment, executed a note in favor of Bank One in that amount. Sees also executed an "Unlimited Continuing Guaranty" that assured full payment of all debts Sees Equipment owed. Sees Equipment was later sold, and the buyers assumed the Bank One debt. The buyers then defaulted. Bank One filed a complaint against all parties involved, including Sees as guarantor.
*156 Thereafter, designating the guaranty agreement, Bank One filed a motion for summary judgment claiming no genuine issues of material fact existed as to Sees' liability as guarantor. In opposition, Sees argued that he was fraudulently induced to sign the agreement. According to Sees, he signed the document only after receiving an oral assurance from a loan officer that the purpose of the guaranty was to provide leverage to guarantee Sees' cooperation in the event of corporate default. Sees also filed a cross motion for summary judgment contending that the assurance amounted to an oral modification of the guaranty agreement. The trial court denied Sees' motion and entered summary judgment in Bank One's favor. On review the Court of Appeals affirmed, holding that the "signed writing" requirement of Indiana Code section 26-2-9-4 barred Sees from asserting an oral modification of a credit agreement or fraud in the inducement as an affirmative defense. See Sees v. Bank One, Indiana, NA., 804 N.BE.2d 227, 229-30 (Ind.Ct.App.2004). Having previously granted transfer we now affirm in part and reverse in part the judgment of the trial court.[1]
Discussion
I.
Indiana Code section 26-2-9-4 provides:
A debtor may bring an action upon a credit agreement only if the agreement:
(1) is in writing;
(2) sets forth all material terms and conditions of the credit agreement, including the loan amount, rate of interest, duration, and security; and
(8) is signed by the creditor and the debtor.
(Emphasis added). Sees does not dispute that he is a "debtor" and that the guaranty agreement is a "credit agreement" within the meaning of the statute. Sees contends, however, that he is not attempting to "bring an action" on the guaranty agreement but is instead seeking to interpose an affirmative defense to Bank One's claim. Pointing to the "in writing" provision, Bank One contends the statute prohibits Sees from asserting a defense or a claim based on the alleged oral representation of one of its agents. In support of its position Bank One cites Ohio Valley Plastics, Inc. v. National City Bank, 687 N.E.2d 260 (Ind.Ct.App.1997), trans. de-mied, and Wabash Grain, Inc., v. Bank One, Crawfordsville, N.A., 718 N.E.2d 328 (Ind.Ct.App.1999).
In Ohio Valley, a loan applicant applied to the Bank for a $300,000 line of credit to finance the purchase of a business. The Bank's loan officer consistently assured the applicant that the loan had been approved. In reliance on that representation the applicant wrote a check on the line of credit for approximately $90,000. Written with full knowledge of the loan officer and in his presence, the check bounced. In fact the line of credit had never been approved, and further, the officer had never submitted the loan application to the Bank's loan committee. Ohkto Valley, 687 N.E.2d at 262. Citing lost business opportunities and damage to business reputation along with other damages, the loan applicant sued the Bank alleging fraud and promissory estoppel. The trial court granted summary judgment in the Bank's favor on the basis of the then existing statute, which, similar to the present statute, referred to "an action upon an agree *157 ment." The loan applicant appealed arguing that the statute did not apply because his lawsuit was based on theories of fraud and promissory estoppel and thus was not an "action upon an agreement." Id. at 268. Rejecting this argument and referring to the statute as a Statute of Frauds, the Court of Appeals observed:
The substance of an action, rather than its form, controls whether a particular statute has application in a particular lawsuit.... Regardless of whether the present cause of action is labeled as a breach of contract, misrepresentation, fraud, deceit, [or] promissory estoppel, its substance is that of an action upon an agreement by a bank to loan money. Therefore, the Statute of Frauds applies.
[[Image here]]
[A] claim of estoppel or fraud will not operate to remove a case from a Statute of Frauds where the promise relied upon is the very promise that. the Statute declares unenforceable if not in writing.
Id. at 263-64 (citations omitted).
In Wabash Grain, the Bank sued a debtor and a guarantor, alleging default on a $260,000 loan. In response, the debtor and the guarantor filed a counterclaim based on theories of promissory estoppel, fraud, and breach of an alleged oral agreement that the bank would lend the debtor the money on a seven-year repayment schedule. Wabash Grain, 713 N.E.2d at 324. Affirming the grant of summary judgment in favor of the Bank, our Court of Appeals cited the above quote from Ohio Valley and continued, "Consequently [the statute] applies to defensive claims of promissory estoppel or waiver." Id. at 326.
Neither of the foregoing cases resolves the precise issue before us: whether the statute prohibits a debtor's assertion of affirmative defenses. Both cases involved debtor-initiated claims against a creditor. And although the court in Wabash Grain declared that the statute applies to "defensive claims," the defenses in that case were raised in the context of a debtor's counterclaim. Such a claim provides the vehicle through which a cause of action is prosecuted. See Braden v. Braden, 575 N.E.2d 293, 295 (Ind.Ct.App.1991) (noting that a counterclaim must state facts sufficient to constitute a cause of action in favor of the defendant). The statute clearly prohibits a debtor's attempt to "bring an action" against a creditor "upon a credit agreement." We must resolve whether the statute also prohibits a debtor from asserting an affirmative defense as a freestanding claim to an action brought by a creditor.
The first step in interpreting a statute is to determine whether the legislature has spoken clearly and unambiguously on the point in qliestion. Rheem Mfg. Co. v. Phelps Heating & Air Conditioning, Inc, 746 N.E.2d 941, 947 (Ind.2001). When a statute is clear and unambiguous, we need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. Poehlman v. Feferman, 717 N.E.2d 578, 581 (Ind.1999). Clear and unambiguous statutes leave no room for judicial construction. Id. However, when a statute is susceptible to more than one interpretation, it is deemed ambiguous and thus open to judicial construction. Amoco Production Co. v. Laird, 622 N.E.2d 912, 915 (Ind.1993)." And when faced with an ambiguous statute other well-established rules of statutory construction are applicable. One such rule is that our primary goal of statutory construction is to determine, give effect to, and implement the intent of the legislature. Neal v. DeKalb Co. Div. of Family & Children, 796 N.E.2d 280, 284 (Ind.2008).
*158 Although not specifically referring to tenets of statutory construction, the Court of Appeals concluded that at least one purpose of the "in writing" requirement of Indiana Code section 26-2-9-4 is to avoid a contest over the eredibility of the evidence in an oral promise or agreement. According to the Court of Appeals, "[that of course, is precisely what the statute seeks to avoid." Sees, 804 N.E.2d at 2830 (citing Wabash Grain, 713 N.E.2d at 326). In essence the Court construed the statute not only as requiring a written agreement, but also as applicable to defensive claims as well. Sees, 804 N.E.2d at 280. We have a different view of this statute than that of our colleagues.
Beginning in the mid-1980's, in response to the increasing litigation brought by borrowers against creditors, much of which alleged oral promises on the part of creditors, a number of jurisdictions began enacting legislation to bring credit agreements within the Statute of Frauds. See John L. Culhane, Jr., Lender Liability Limitation Amendments to State Statutes of Frauds, 45 Bus. Law. 1779, 1779 (1990) (noting that "One of the principal legal developments of the last past decade has been the dramatic increase in the number of lawsuits brought against banks and other lending institutions by their borrowers and the concomitant emergence of an area of law devoted to lender liability."). The purpose of these statutes was to protect lenders from debtors' fraudulent claims. Todd C. Pearson, Limiting Lender IAiability: The Trond Toward Written Credit Agreement Statutes, 76 Minn. L.Rev. 295, 298-300 (1991). As the Louisiana Supreme Court observed:
These statutes were enacted primarily to limit the most frequent lender Hability claims-those which involve assertions of breach of oral agreements to lend, to refinance or to forebear from enforcing contractual remedies-by requiring a writing as a prerequisite for a debtor to sue a lender and thus precluding debtors from bringing claims based on oral agreements. The goal was to prevent bank customers from bringing baseless lender liability claims against banks alleging breaches of undocumented side agreements between the customer and one or more bank officers.
Whitney Nat'l Bank v. Rockwell, 661 So.2d 1825, 1329-30 (La.1995) (citations omitted).
Consistent with this national trend, the Indiana Legislature in 1989 also enacted a lender liability statute. Initially placed under the same title and article as the Statute of Frauds, the statute provided in relevant part:
A debtor may bring an action upon an agreement with a creditor to enter into a new credit agreement ... only if the agreement:
(1) is in writing;
(2) sets forth all the material terms and conditions of the agreement; and
(8) is signed by the creditor and the debtor.
Ind.Code § 32-2-1.5-5 (1989). With only slight modifications not relevant here the statute was repealed in 2002 and re-codified under the same title and article as the Commercial Transactions Code. See Ind. Code § 26-2-9-4. Under the subheading "Credit Agreements," and referred to by our Court of Appeals as the Indiana Lender Liability Act (ILLA), the statute exists in its present form today.[2]
*159 In a number of jurisdictions credit agreement statutes, which some jurisdictions refer to as the statute of frauds, explicitly prohibit both debtors and creditors from asserting a defense unless the agreement is in writing.[3] In some jurisdictions debtors are precluded from enforcing a creditor's side agreement not to enforce a contract unless the agreement is in writing.[4] And at least in one jurisdiction the credit agreement statute explicitly prohibits a debtor from maintaining an action "on or in any way related to a eredit agreement" unless it is in writing. 815 IIL Comp. Stat. 160/2 (1989). Not surprising, ly, in those jurisdictions that have addressed the issue, courts have barred debtors from asserting oral side agreements as a defense to creditors' claims. See, eg., Nat'l Cmty. Bank of New Jersey v. G.L.T. Indus., Inc., 276 N.J.Super. 1, 647 A.2d 157 (1994) (declaring that statute of frauds prohibited borrower's defense of alleged oral agreement to restructure debt in response to Bank's action on notes and guarantees); Teachers Ins. & Annuity Ass'n of Am. v. LaSalle Nat'l Bank, 295 Ill.App.3d 61, 229 Ill.Dec. 408, 691 N.E.2d 881 (1998), (declaring credit agreement statute prohibits borrowers from asserting counterclaims or affirmative defenses against lenders based on oral agreements). Indiana's statute is worded differently than the foregoing statutes.
We interpret the ILLA as prohibiting only debtor-initiated action against a creditor. Where the creditor brings an action against the debtor, the text of the Act itself does not bar the debtor from asserting an affirmative defense based on an alleged oral representation by the creditor. In our view, interpreting the statute in this way is consistent with its plain meaning. Too, it is consistent with what we discern as the legislative intent in enacting the statute, namely: to protect lenders from lawsuits by debtors asserting fraudulent claims. We also find support for this interpretation of the statute in two other jurisdictions that have enacted statutes nearly identical to the ILLA.[5] In both, the statutes have been construed to allow a debtor to raise affirmative defenses based on an alleged oral agreement. See, eg., Maynard v. Cent. Nat'l Bank, 640 So.2d *160 1212, 1218 (Fla.Ct.App.1994) (holding that Florida's statute of frauds "prevents a debtor from bringing a claim based on an oral credit agreement but does not prevent a debtor from asserting affirmative defenses based on an oral credit agreement"); Hibernia Nat'l Bank v. Contractor's Equip. & Supply, Inc., 804 So.2d 760, 762-63 (La.Ct.App.2001) (holding that Louisiana's credit "agreement statute operates only to preclude "a borrower's affirmative actions for damages based on oral side agreements" and not to preclude a borrower's defenses in an action initiated by a creditor). In sum we hold today that the provision of the Indiana Lender Liability Act that prohibits a debtor from "bringling] an action upon a credit agreement" unless it "is in writing" does not apply to a debtor's assertion of an affirmative defense.
In granting summary judgment in Bank One's favor the trial court found that Sees' defense violated the "statute of frauds." Appellant's App. at 11. As the Court of Appeals noted, although the trial court did not specifically address the ILLA in its order, the parties argued the ILLA's applicability at both the trial court level and on appeal. As did the Court of Appeals we also "assume this is the 'statute of frauds' to which the trial court's order refers." Sees, 804 N.E.2d at 229 n. 1. But as we have explained Sees was not prohibited from pursuing an affirmative defense under the ILLA. Therefore the trial court erred in granting summary judgment in Bank One's favor. On this issue we reverse the trial court's judgment.
IL.
In addition to opposing Bank One's motion for summary judgment by asserting fraudulent inducement as an affirmative defehse, Sees also filed his own motion for summary judgment alleging that Bank One had orally modified the guaranty agreement. The trial court denied Sees motion.
When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard as the trial court. Bank of New York v. Nally, 820 N.E.2d 644, 648 (Ind.2005). A party seeking summary judgment must show "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C); Fraternal Order of Police, Lodge No. 48 v. City of Evansville, 829 N.E.2d 494, 496 (Ind.2005). The review of a summary judgment motion is limited to those materials designated to the trial court. Ind. Trial Rule 56(H); Fraternal Order of Police, 829 N.E.2d at 496. The court accepts as true those facts alleged by the nonmoving party, construes the evidence in favor of the non-moving party, and resolves all doubts against the moving party. Nally, 820 N.E.2d at 648 (Ind.2005); Shambaugh & Son, Inc. v. Carlisle, 763 N.E.2d 459, 461 (Ind.2002). When considering cross motions of summary judgment, the trial court is required to consider each motion separately construing the facts most favorably to the non-moving party in each instance. Young v. City of Franklin, 494 N.E.2d 316, 317 (Ind.1986).
The Unlimited Continuing Guaranty, which was before the trial court as a part of the Rule 56 materials, included the following clause: "No modification or waiver of this Guaranty shall be effective unless it is in writing and signed by the party against whom it is being enforced." Appellant's App. at 30. In support of his claim that Bank One orally modified the Guaranty, Sees designated his Answer to Bank One's Complaint and the Affidavit of John T. Sees. Appellant's App. at 72. The relevant portions of Sees' affidavit alleged, *161 "We initially declined to sign the agreement until we were told by [a bank representative] that the purpose of the guaranty was not to proceed against us personally, but only to provide leverage to guarantee our cooperation in the event of corporate default." Appellant's App. at 78.
It is certainly the case that parties may mutually modify contractual undertakings. @Gorbett v. Estelle, 488 N.E.2d 766, 768 (Ind.Ct.App.1982). Even a contract providing that any modification thereof must be in writing, nevertheless may be modified orally. van de Leuv v. Methodist Hosp., 642 N.E.2d 531, 534 (Ind. Ct. App.1994); First Nat'l Bank of New Castle v. Acra, 462 N.E.2d 1345, 1349 (Ind. Ct.App.1984). But a claim that a contract has been modified presupposes that the contract has already been executed. Thus, any subsequent conduct, including an oral agreement, could serve to alter the original contract. See id. Here however the statements upon which the alleged modification is based occurred before the guaranty agreement became final, namely, during contract formation.
As a general. proposition a party is excluded from presenting extrinsic evidence of prior or contemporaneous oral agreements offered to vary or contradict the terms of a written contract. Paulison v. Centier Bank, 704 N.E.2d 482, 492 (Ind. Ct.App.1998). Rather, a written contract is presumed to embody the parties' entire agreement. Keystone Square Shopping Cir. Co. v. Marsh Supermarkets, Inc., 459 N.E.2d 420, 422 (Ind.Ct.App.1984). There are exceptions of course, including a claim that a party was induced through fraudulent representation to enter the contract. Circle Ctr. Dev. Co. v. Y/G Indiana. L.P., 762 N.E.2d 176, 179 (Ind.Ct.App.2002).
In light of our discussion in part I, Sees is not prohibited by the ILLA from pursuing a claim of fraudulent inducement as an affirmative defense. However, the oral representation on which Sees relies to support that claim does not also provide support for the notion that the guaranty agreement was modified. Instead, because the oral representation occurred before the guaranty became final there could be no modification as a matter of law. Essentially, there was nothing to modify. Sees is thus bound by the written agreement unless he is successful on his fraud claim, a matter about which we express no opinion.[6] Accordingly the trial court correctly denied Seesg' cross motion for summary judgment.
Conclusion
The judgment of the trial court is affirmed in part and reversed in part.
DICKSON and SULLIVAN, JJ., | concur.
*162 SHEPARD, C.J., concurs and dissents with separate opinion.
BOEHM, J., concurs in part and dissents in part with separate opinion, in which SHEPARD, C.J., concurs.

. While this case was pending on transfer the parties settled their differences and filed a joint motion to withdraw this appeal and to dismiss it as moot. Although as between the parties this matter is now settled, we nonetheless believe the legal issues raised in this case are significant and warrant this Court's attention. We therefore deny the parties' motion.

. In the first reported opinion discussing the statute since its 2002 re-codification, the Court of Appeals refers to it as the "Indiana Lender Liability Act." See, eg., Sees, 804 N.E.2d at 228. Sees refers to the statute alternatively as the "Indiana Lender Liability Act" and the "Credit Agreement Statute." See e.g., Appellant's Br. at 12. Bank One *159 refers to the statute as the "Credit Agreement Statute of Frauds." See eg., Br. of Appellee at 3. We agree with the Court of Appeals' designation and thus refer to the statute as the Indiana Lender Liability Act.

. For example in the State of. Kansas, "A debtor or a creditor may not maintain an action for legal or equitable relief or a defense, based in either case upon a failure to perform on an alleged agreement, unless the material terms and conditions of the agreement are in writing and signed by the creditor and the debtor." Kan. Stat. Ann. § 16-118(a) (1998). For similarly worded statutes, see Col.Rev.Stat. § 38-10-124 (1989); Neb.Rev. Stat. § 45-1,113 (1990); Okla. Stat. tit. 15, § 140 (1989); Uiah Code § 25-5-4 (2004).

. For example in the State of New Jersey, "No action shall be brought upon any of the following agreements or promises, unless the agreement or promise, upon which such action shall be brought or some memorandum or note thereof, shall be in writing ... [aln agreement by a creditor to forbear from exercising remedies pursuant to a contract, promise, undertaking or commitment ...." N.J. Stat. § 25:1-5 (1996). For similarly worded statutes, see Ariz.Rev.Stat. Ann. § 44-101 (1989); Ark.Code Ann. § 4-59-101 (1989); Conn. Gen.Stat § 52-550(a) (1992); Del. Code tit. 6, § 2714 (1990); Haw.Rev.Stat. § 656-1 (1990); Iowa Code § 535.17 (1990); Ky.Rev.Stat. § 371.010 (1990).

. In the State of Florida, "A debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Fla. Stat. § 687.0304(2) (1989). Louisiana has a similarly worded statute. See La.Rev.Stat. 6:1122 (1989).

. In his dissent Justice Boshm addresses the merits of Sees' fraud claim. We have declined to do so for several reasons. Foremost is that the merits of the claim were not the basis on which the trial court granted summary judgment in Bank One's favor. We are of course aware that in reviewing a trial court's ruling on a motion for summary judgment, we may affirm on any grounds the Trial Rule 56 materials support. Caft v. Bd. Of Comm'rs of Knox County, T79 NE2d 1, 3 (Ind.2002). As the dissent points out, the Second Restatement of Contracts, along with a number of jurisdictions, are of the view that "a statement of present intention is a statement of existing fact and therefore potentially actionable as fraud." Dissent op. at 2 (citations omitted). Current Indiana precedent is to the contrary. Should we revisit this precedent? Why or why not? Neither the parties to this appeal nor the trial court addressed this point And thus we do not have the benefit of briefing or analysis. The procedural posture of this case makes ruling upon the merits of Sees' fraud claim at least unnecessary and at most premature.