John McGUIRE a/k/a Jack McGuire
and Ruth F. McGuire, Appellants–
Third Party Plaintiffs,

v.

CENTURY SURETY COMPANY,
Appellee–Third Party
Defendant.

No. 55A01–0604–CV–161.

Court of Appeals of Indiana.

Feb. 9, 2007.

E. Franco Upano, Indianapolis, IN, Attorney for Appellants.

Jan N. Campbell, John M. Mead, Leeuw Oberlies & Campbell, P.C., Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

John and Ruth McGuire appeal the trial court's entry of summary judgment in favor of Century Surety Company ("Century"). We affirm.

### Issues

The issues before us are:

I. whether the trial court properly denied the McGuires' motion for an extension of time to respond to Century's summary judgment motion;

II. whether the entry of summary judgment in favor of Century should have been stayed by the McGuires' filing for bankruptcy; and

III. whether the trial court properly entered summary judgment in favor of Century.

### Facts

On March 11, 2004, Mortgage Electronic Registration Systems, Inc. ("Mortgage Electronic"), filed a complaint to foreclose a mortgage on property owned by the McGuires in Martinsville. The property included a house dating from the mid–1800's that the McGuires had been renovating. In connection with the renovation, the McGuires had purchased a "Commercial Lines" insurance policy from Century, which included a "Builders Risk Coverage Form." Appellee's App. pp. 138, 203. On August 2 and 9, 2003, two walls of the house collapsed during the renovation. After investigating the McGuires' claim for coverage, Century informed them that the collapses fell within a policy exclusion, based upon faulty workmanship in the renovation, and would not be covered.

On March 15, 2005, the McGuires filed an answer to Mortgage Electronic's second amended complaint for foreclosure. In addition, the McGuires initiated a third-party action against Century, alleging it had improperly and in bad faith denied their claim for coverage. On October 10, 2005, the McGuires filed a bankruptcy petition under Chapter 13 of the Bankruptcy Code in the Southern District of Indiana. On December 1, 2005, Century filed a motion for summary judgment on the McGuires' third-party complaint.

On December 29, 2005, the McGuires filed a motion for an extension of time to respond to Century's summary judgment motion, stating that they intended "to bring this matter to the attention of the [bankruptcy] Trustee. . . ." Appellant's App.[1] Century objected to any extension of time. The trial court did not immediately respond to this motion, but on January 13, 2006, it denied the McGuires' motion.

Counsel for the McGuires apparently did not immediately receive notice of this ruling. He appeared at the scheduled summary judgment hearing on January 19, 2006, and reiterated his request for an extension to file a response to Century's summary judgment motion. The trial court denied this request and heard argument on the merits of the motion and whether the McGuires' bankruptcy filing should stay further proceedings in the case between the McGuires and Century. At the conclusion of the hearing, the trial court ruled that it would enter summary judg-

---

1. The McGuires' appendix is not paginated, as required by Indiana Appellate Rule 51(C). Their appendix is deficient in other respects, as it failed to include copies of any of the pleadings in this case, Century's summary judgment motion, or any of the evidence Century designated in support of their motion. Century filed a separate appendix that has allowed us to review the merits of this appeal.

ment in Century's favor. After the trial court denied the McGuires' motion to correct error, they initiated this appeal.

## Analysis

### I. Denial of Motion for Extension of Time

The McGuires' first argument is that the trial court should have granted their motion for an extension of time to respond to Century's summary judgment motion. Under Indiana Trial Rule 56(C), a party has thirty days to respond to an opposing party's summary judgment motion. Trial Rule 56(I) provides, "For cause found, the Court may alter any time limit set forth in this rule upon motion made within the applicable time limit." We review a trial court's action in altering the time limits on summary judgment for an abuse of discretion. *Farm Credit Servs. of Mid–America, FLCA v. Tucker,* 792 N.E.2d 565, 568 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances before it. *Id.*

This is a situation in which the trial court could have granted the McGuires' motion for an extension of time, but it did not abuse its discretion in refusing to grant the motion. One of the primary reasons the McGuires sought an extension purportedly was so that they could apprise the bankruptcy trustee of the pending action between them and Century and to allow the trustee to determine whether to pursue the action. However, the third party action between the McGuires and Century already was pending when the McGuires filed for bankruptcy. There is no explanation as to why the trustee would not or should not have been aware of this claim by the McGuires—a potential asset that could have been made available to the McGuires' creditors—at the time of their initial bankruptcy filing.

Counsel for the McGuires did assert generally that he had not been able to prepare a response to the summary judgment motion because of time constraints caused by representing the McGuires in the bankruptcy proceeding. However, the motion did not indicate that the McGuires needed more time to gather evidence, depose witnesses, or any other legally mandated reason. A general claim of being too busy to timely respond to another party's motion does not *require* a court to grant a motion for an extension of time to file a response, although it may *permit* a trial court to grant such a motion.

The McGuires also assert that the trial court's denial of their motion deprived them of procedural due process because they were unable to file a formal response to Century's summary judgment motion. This court has found it to be a violation of due process for a trial court to grant a motion for an extension of time, then later rescind that ruling after the party that had moved for the extension had acted in reliance on the granting of the motion. *See Chandler v. Dillon ex rel. Estate of Bennett,* 754 N.E.2d 1002, 1006 (Ind.Ct.App. 2001). Here, however, the trial court never granted the motion for an extension of time, and counsel for the McGuires should not have assumed that it would be granted.[2] The trial court did not violate the McGuires' due process rights.

Finally, to the extent the McGuires contend that all of their motions in this case were denied, while all of those filed by Century or Mortgage Electronic were

---

**2.** In fact, without having received immediate notice from the trial court that the motion would be granted, counsel should have assumed it would be denied and acted accordingly.

granted, such a blanket contention fails to present a basis on appeal for establishing that the trial court abused its discretion in denying their motion for an extension of time. *Cf. Lasater v. Lasater*, 809 N.E.2d 380, 390 n. 6 (Ind.Ct.App.2004) (declining to address appellant's due process argument based on general complaint that trial court treated her witnesses differently from appellee's witnesses). We cannot say the trial court abused its discretion in denying the motion.

## II. Bankruptcy Stay

Next, we address the McGuires' contention that the filing of their bankruptcy petition should have stayed any action in the case between them and Century. The automatic stay provision of the Bankruptcy Code provides, in part, that the filing of a bankruptcy petition:

> operates as a stay . . . of . . . the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title. . . .

11 U.S.C. § 362(a)(1). There is no question here that the automatic stay applied to prevent any further action by Mortgage Electronic to foreclose the mortgage. Whether it applied to the third-party ac-tion between the McGuires and Century is another matter.

■ Century first contends that the question of whether the bankruptcy stay applied in this case is moot because in April of this year, after the summary judgment was entered, the McGuires voluntarily dismissed their bankruptcy petition. "An appeal is moot when it is no longer live and the parties lack a legally cognizable interest in the outcome or when no effective relief can be rendered to the parties." *Lake County Sheriff's Corrections Merit Bd. v. Peron*, 756 N.E.2d 1025, 1027 (Ind.Ct.App.2001). We conclude that the issue regarding the automatic stay is not moot. It has been held, "Actions taken in violation of an automatic stay ordinarily are *void*." *Middle Tennessee News Co., Inc. v. Charnel of Cincinnati, Inc.*, 250 F.3d 1077, 1082 (7th Cir.2001) (emphasis added). Thus, if the stay should have prevented the entry of summary judgment in favor of Century at the time it was entered, then that judgment is void, regardless of the later dismissal of the bankruptcy petition. Century now would be free to file another motion for summary judgment, but the McGuires would have another opportunity to respond to it. We will address the merits of this issue, especially given the McGuires's argument before the trial court that the automatic stay should have applied.[3]

It appears to be the prevailing rule in numerous jurisdictions that generally, the

---

**3.** We also note the existence of some question in our minds as to whether the bankruptcy trustee might have been the real party in interest in this case while the bankruptcy petition was pending. *See Hammes v. Brumley*, 659 N.E.2d 1021, 1029 (Ind.1995). The McGuires, however, clearly had standing to pursue their third-party action, and no party ever moved to substitute the trustee as the real party in interest. *See id.* at 1029–30. No party addresses this issue on appeal, either. Regardless, even if the trustee should have been the proper party to litigate this action below, we do believe any question on this point to be moot because of the bankruptcy petition's subsequent dismissal. That is, reversal of this judgment because the trustee should have been joined as a party would be pointless; the trustee no longer exists as a legal entity and could not be joined now as a party if we reversed and remanded for further proceedings. The McGuires again would be the parties to litigate this action.

bankruptcy automatic stay prevents commencement or continuation of actions *against* a debtor, but does not stay actions *by* a debtor. "The automatic stay that accompanies bankruptcy proceedings is a necessary and intended source of relaxation for the debtor, not for the creditor." *Carpenter v. Farm Credit Servs. of Mid-America, ACA,* 654 N.E.2d 1125, 1127 (Ind.1995). The congressional intent behind the automatic stay is to give "the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." *Id.* (quoting H.R.Rep. 95–595, 95th Cong., 1 st Session 340 (1977)). "The debtor is the intended beneficiary of the relief provided." *Id.* Pursuant to the intent behind the automatic stay, our supreme court held in *Carpenter* that the filing of a bankruptcy petition did not prevent debtors from appealing state court judgments against them. *Id.* at 1128.

■ With respect to the propriety of continuing proceedings on a third-party complaint initiated by a debtor who has filed for bankruptcy, one court has explained: "A third-party complaint is a separate, though related, claim brought within the context of ongoing litigation.... Its character is not changed by the fact that it was brought in the context of a suit against the debtor rather than as an independent action." *Jefferson Ward Stores, Inc. v. Doody Co.,* 48 B.R. 276, 278–79 (D.C.Pa.1985). The court held that the automatic stay under Section 362 of the Bankruptcy Code did not apply to the debtor's third-party complaint and any motions filed in connection with it. *Id.* Other courts have reached similar results with respect to third-party claims and counterclaims brought by a debtor. *See, e.g., Maritime Elec. Co., Inc. v. United Jersey Bank,* 959 F.2d 1194, 1205 (3rd Cir.1991) ("within one case, actions *against* a debtor

will be suspended even though closely related claims asserted *by* the debtor may continue. Judicial proceedings resting on counterclaims and third-party claims asserted by a defendant-debtor are not stayed, while same-case proceedings arising out [of] claims asserted by the plaintiff are stayed.") (emphasis in original); *First Wisconsin Nat'l Bank of Milwaukee v. Grandlich Dev. Corp.,* 565 F.2d 879, 880 (5th Cir.1978) (holding bankruptcy filing did not stay action on counterclaim filed by debtors against creditor).

The McGuires rely primarily on a case from Texas, *Dyer v. Weedon,* 769 S.W.2d 711 (Tex.App.—Waco, 1989), in arguing that their bankruptcy filing should have stayed any further action on their third-party complaint against Century. That case concerned a lease dispute in which the tenants sued the landlord for specific performance of the lease. After the lawsuit was initiated, the landlord filed for bankruptcy. Thereafter, the trial court granted the landlord an injunction to have the tenants evicted from the property. The Texas appellate court concluded that Section 362 applied to stay any action by the landlord-debtor against the tenants. *Dyer,* 769 S.W.2d at 713–14. The court stated, "the unfairness of permitting the debtor to pursue its counterclaims while staying the claims of its opponent is obvious." *Id.* at 714. It then held that neither the tenants nor the landlord-debtor could proceed with their claims or defenses unless the bankruptcy court entered an order lifting the automatic stay. *Id.*

We need not take a position on whether we fully agree with *Dyer.* With respect to the McGuires' third-party action against Century, Century is not pursuing any claims against the McGuires. It was not acting as a creditor of the McGuires or seeking any monetary recovery against

what then was the bankruptcy estate.[4] Thus, there would be no inherent "unfairness" here in conducting further proceedings on the third-party action between the McGuires and Century, which in no way directly involved the original plaintiff and creditor of the McGuires, Mortgage Electronic, or any of Mortgage Electronic's claims. *Dyer* is clearly distinguishable from the case before us.

In keeping with cases from other jurisdictions and our own supreme court's view that the automatic stay provision of Section 362 is clearly intended to benefit the bankrupt debtor, we hold that it does not apply to third-party complaints brought by a defendant-debtor against a party who originally was not a party to the action and on claims not directly related to the initial complaint brought by a plaintiff-creditor. This also applies to motions filed in connection with the third-party complaint. *See Jefferson Ward Stores*, 48 B.R. at 279; *see also Trans Caribbean Lines, Inc. v. Tracor Marine, Inc.*, 49 B.R. 360, 362 (D.C.Fla.1985) (holding Section 362 did not prevent debtor in reorganization from independently prosecuting a counterclaim or dismissal of such a counterclaim). As such, the trial court here was not stayed from ruling on the merits of Century's summary judgment motion against the McGuires' third-party complaint.

### III. Merits of the Summary Judgment Ruling

We now address the merits of the trial court's summary judgment ruling. We review a summary judgment ruling by using the same standard as the trial court: summary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Fraternal Order of Police, Lodge No.73 v. City of Evansville*, 829 N.E.2d 494, 496 (Ind.2005). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party. *Fraternal Order of Police*, 829 N.E.2d at 496. The review of a summary judgment motion is limited to those materials designated to the trial court. *Id.*

Century contends that the McGuires' claim for coverage clearly was excluded by the terms of the policy. If an insurance policy is clear and unambiguous, its language is given its plain meaning. *Auto–Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind.2006). If there is an ambiguity, the contract is construed strictly against the insurer and the language of the policy is viewed from the insured's perspective. *Id.* An ambiguity exists if a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* An exclusionary clause of an insurance policy must clearly and unmistakably bring within its scope the particular act or omission that will bring the exclusion into play in order to exclude coverage. *Great Lakes Chem. Corp. v. International Surplus Lines Ins. Co.*, 638 N.E.2d 847, 850 (Ind. Ct.App.1994). "Even where clauses are unambiguous when read within the policy as a whole, but in effect provide only illusory coverage, the policy will be enforced to satisfy the reasonable expectations of the insured." *Id.*

The "Commercial Lines Policy" issued by Century to the McGuires is lengthy and detailed. The relevant portions of the policy for purposes of this case are the "Builders Risk Coverage Form" and

---

4. Century, for example, did not seek to recover attorney fees from the McGuires or assert a counterclaim against them.

"Causes of Loss—Special Form" included as part of the policy—specifically the property coverage portion of the policy, as opposed to the separate general liability portion. Part D of the "Causes of Loss—Special Form" is entitled "Additional Coverage—Collapse." Appellee's App. p. 217. Part of this provision states:

> 2. We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building that is insured under this Coverage Form or that contains Covered Property insured under this Coverage Form, if the collapse is caused by one or more of the following:
>
> \* \* \* \* \* \*
>
> f. Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. . . .

*Id.* at 217–18.

 In their reply brief, the McGuires focus only on Part D.2.f. of the "Causes of Loss" form in essentially arguing that the collapse of two walls on the property they were renovating should have been a covered occurrence under the Century policy, regardless of the cause of the collapse.[5] However, we believe the language of the policy as a whole clearly and unambiguously excludes coverage for any collapse that has resulted from faulty workmanship. The "Builders Risk Coverage Form" states under Part F(3), "Restriction of Additional Coverage—Collapse," as follows: "If the Causes of Loss—Special Form is applicable to this coverage form, Paragraph D.2.f. of the Additional Coverage—Collapse does not apply to this coverage form." Id. at 209. Thus, because the "Causes of Loss—Special Form" was part of the McGuires' policy, any language found in paragraph

D.2.f. is not applicable here. Also, Part 3(c) of the "Causes of Loss—Special Form" states in part: "We will not pay for loss or damage caused by or resulting from . . . [f]aulty, inadequate or defective . . . [d]esign, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction. . . ." *Id.* at 215. There is an apparent exception to this "faulty workmanship" exclusion in the "Causes of Loss—Special Form" with respect to collapses of buildings, but the "Builders Risk Coverage Form" removes this exception.

We also believe it is clear that the "Builders Risk Coverage Form" was intended to take precedence over the "Causes of Loss—Special Form." As revealed on the declarations page of the property insurance portion of the "Commercial Lines Policy" the McGuires purchased, the specific type of property coverage they purchased was "builder's risk." *Id.* at 186. The "Causes of Loss—Special Form" included in the property coverage portion of the policy also clearly appears to be a general form that could apply to various types of policies, while the "Builders Risk Coverage Form" specifically applies in this case. Finally, the "Builders Risk" form only contravenes the "Causes of Loss" form in this one regard regarding collapses resulting from two specified causes, i.e. "defective material or methods." *Id.* at 218. The "Builders Risk" form does not completely, or even substantially, negate the "Causes of Loss" form or render it a nullity.

 The McGuires also apparently contend that the exclusion of coverage for any collapse that has resulted from faulty workmanship renders the Century policy illusory and that coverage under the policy is dictated regardless of the plain language

---

5. In their opening brief, the McGuires failed to address any of the policy's language.

of the exclusion. We disagree. Despite the exclusion of coverage for collapses resulting from faulty workmanship, collapses resulting from a number of other factors, such as decay, insect damage, the weight of people or personal property, or the weight of rain collecting on a roof, were still covered. There also evidently was coverage for a number of other possible mishaps that could have occurred during renovation of the property, aside from full or partial collapses of the building. We decline to require coverage of a claim based on a collapse caused by faulty workmanship, in direct contravention of the plain language of the policy.

■ Century presented uncontradicted evidence to the trial court that the collapse of the two walls was indeed caused by the faulty workmanship of the McGuires or those working for them. It introduced a report from David McClean, a forensic engineer who worked for Donan Engineering Company.[6] The report stated in part:

The north wall collapse is due to the excavation adjacent to the foundation.... This is especially risky when the excavation is allowed to partially fill with water and the soil becomes weaker due to the elevated moisture content.

The south crawlspace collapsed adjacent to the deeper excavation of the basement. The exposure of the bottom of the crawlspace foundation is very risky....

&ast; &ast; &ast; &ast; &ast; &ast;

The north and south wall collapses are caused from too deep an excavation adjacent to the shallow foundation, allowing them to collapse.

Appellee's App. pp. 32–33. Century also introduced the affidavit of Oran Taylor, a building inspector, who stated generally, "I observed extremely faulty workmanship in the renovations that were being attempted by the McGuires and/or their contractors." *Id.* at 244.

On summary judgment, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Chenoweth v. Estate of Wilson*, 827 N.E.2d 44, 47 (Ind.Ct.App.2005). If this requirement is met, the burden shifts to the nonmovant to establish genuine issues of material fact for trial. *Id.* We conclude the statements of McClean and Taylor are sufficient to constitute a prima facie showing that the collapse of the walls resulted from faulty workmanship and, thus, were not covered by the Century policy. The McGuires, then, were required to present some evidence to contradict the evidence presented by Century, but they did not do so. The trial court properly entered summary judgment in Century's favor.

### Conclusion

We cannot say the trial court abused its discretion in denying the McGuires' motion for an extension of time to respond to Century's summary judgment motion. We also conclude that the McGuires' bankruptcy filing did not stay further action on their third-party complaint and that the trial court properly granted summary judgment in Century's favor. We affirm.

Affirmed.

SULLIVAN, J., and ROBB, J., concur.

---

6. On appeal, the McGuires challenge the admissibility of this report. They did not challenge its admissibility before the trial court, which means they have waived any such challenge on appeal. *See Beta Steel v. Rust*, 830 N.E.2d 62, 69 (Ind.Ct.App.2005).