801 So.2d 297 (2001)
Kevin M. STEELE, Appellant,
v.
Susan B. KINSEY and United Automobile Insurance Company, Appellees.
Nos. 2D00-4295, 2D00-4384, 2D01-533.
District Court of Appeal of Florida, Second District.
December 14, 2001.
*298 Louis K. Rosenbloum of Louis K. Rosenbloum, P.A., Pensacola, and Dale Swope of Swope Law Group, Tampa, for Appellant.
Hilda Klein of Conroy Simberg Ganon Krevans & Abel, P.A., Hollywood, for Appellees.
CASANUEVA, Judge.
The issue presented in this consolidated appeal is whether certain language in an insurance policy's supplementary payments provision is ambiguous so that it must be construed in favor of the insured and provide coverage. We affirm the trial court's determination that there is no coverage and certify conflict with Florida Insurance Guaranty Ass'n v. Johnson, 654 So.2d 239 (Fla. 4th DCA 1995).
Susan B. Kinsey was insured under an automobile liability insurance policy with United Automobile Insurance Company. Her policy, in common with most auto liability policies, gave the insurer exclusive control over settling or litigating any claim against the insured for damages covered by the policy. The policy also had a supplementary payments provision stating that the insurer would pay certain costs relating to litigation, e.g., bail bonds and post-judgment interest, including "[o]ther reasonable expenses incurred at our request."
*299 While this policy was in force, Ms. Kinsey was involved in an auto accident with Kevin M. Steele on March 13, 1995. Mr. Steele was injured in the accident and instituted an action against Ms. Kinsey for his damages. Pursuant to section 768.79, Florida Statutes (1995), the offer of judgment statute, Mr. Steele offered to settle his claim against Ms. Kinsey for her policy's limit of $10,000. The offer was not accepted.
During the course of the proceedings, Mr. Steele, Ms. Kinsey, and United Auto entered into a joint stipulation and settlement agreement based on Cunningham v. Standard Guaranty Insurance Co., 630 So.2d 179 (Fla.1994), which held that the trial court had jurisdiction to decide, by stipulation of the parties, the insurer's liability for bad faith before adjudicating the underlying tort action. The parties' stipulation also contemplated that the trial court would decide whether Ms. Kinsey's policy covered, by virtue of the abovequoted language from the supplementary payments provision, any section 789.79 attorney's fees and costs which she might owe Mr. Steele. On Mr. Steele's motion, the trial court concluded that the policy provided no such coverage. Mr. Steele then appealed this adverse finding of the trial court.
The meaning of the supplementary payments language"expenses incurred at our request"is at issue in this case. We agree with the trial court that Ms. Kinsey's policy does not provide coverage for any fees and costs to which Mr. Steele may be entitled under the offer of judgment statute. We find that the language "expenses incurred at our request" is clear on its face and should be applied according to its generally understood meaning. Our resolution of this issue puts us in conflict with the Fourth District's opinion in Johnson.
The common meaning of "request" is "the act of asking, or expressing a desire, for something; solicitation or petition." Webster's New World College Dictionary 1218 (4th ed.2001). The legal meaning of the word is "[a]n asking or petition. The expression of a desire to some person for something to be granted or done, particularly for the payment of a debt or performance of a contract." Black's Law Dictionary 1172 (5th ed.1979). Both of these commonly understood definitions reinforce the clear use of the term within the context of the policythat the insurer intended to pay for expenses that it had authorized and over which it had control, such as the selection of a service or product of known value and cost.
Mr. Steele argues, however, based on Johnson, that the insurer's decision not to settle forced the litigation to continue, causing further expense, and, thus, the subsequent fees and costs were "incurred at [the insurer's] request." In Johnson, the Fourth District interpreted the same language, "other reasonable expenses incurred at our request," in a supplementary payments provision to include insurance coverage for taxable costs when the insurer elected not to settle but to litigate the matter. The Fourth District based its conclusion on the fact that the insurer, like Ms. Kinsey's insurer, had sole discretion to settle or defend. 654 So.2d at 240. The injured plaintiff in Johnson had argued that the language at issue was unambiguous and favorable to him; but he argued alternatively that, in case the court found the language ambiguous, it should construe it against the insurer. The Fourth District found that the supplementary payments provision obviously had the intent of extending coverage and, therefore, construed it liberally in favor of the insured. We find the same language unambiguous and to mean that there is no coverage for *300 section 789.79 fees of the prevailing plaintiff/offeror.
It may be preferable, as a matter of public policy, for the entity that has the sole right to settle or litigate a damages claim to be ultimately responsible for paying the resulting extra expenses, such as the taxable costs in Johnson and the section 789.79 fees here, when the litigation concludes favorably to the other side. However, we cannot enforce such a public policy in the face of a written contract with such a clearly contradictory meaning. It is not the ultimate consequences, intended or unintended, of an insurer's decision to litigate that determine the meaning of a policy's plain language; it is the words themselves. Ross v. Savage, 66 Fla. 106, 63 So. 148 (1913); Paoli v. Natherson & Co., 750 So.2d 46 (Fla. 2d DCA 1999). When faced with an unambiguous provision, the trial court cannot give it any meaning beyond that expressed by the plain language and must construe the provision in accord with the ordinary meaning of the language. The words at issue here, "reasonable expenses incurred at our request," can only mean that the insurer must request the product or service that incurs the expense. We see no need to construe them further.
Although Ms. Kinsey, by virtue of the Cunningham stipulation into which she entered, is insulated from personal liability for Mr. Steele's fees and costs no matter the further outcome of these proceedings, we note that not all personal injury defendants may be so fortunate. The result reached in Johnson, finding coverage despite clear and unambiguous language to the contrary, may well be an appropriate public policy result. One can well envision a scenario where, under section 768.79, an insurer may reject in good faith an offer of judgment, and the jury verdict so exceeds the offer that the resulting final judgment, combining the jury verdict and the section 789.79 fees and costs, is in excess of the insured's policy's limits. In such a case the losing insured defendant, and not the insurer who controlled the case, will be liable for the excess. Although it seems unjust that an insured should be required to bear the brunt of satisfying an excess adverse judgment that resulted, at least in part, from the insurance company's total control of the litigation, any remedy for that injustice is within the sphere of the legislature, not the courts.[1]
We affirm the judgment of the trial court finding no insurance coverage and certify conflict with Florida Insurance Guaranty Ass'n v. Johnson, 654 So.2d 239 (Fla. 4th DCA 1995), as to the interpretation of "reasonable expenses incurred at our request" in the insurance contract's supplementary payments provision when the insurer rejects a settlement that results in further litigation expense.
SALCINES and STRINGER, JJ., Concur.
NOTES
[1] Others have noted the disparate results that occur in applying the offer of judgment statute. In his concurring opinion in Sparks v. Barnes, 755 So.2d 718, 720 (Fla. 2d DCA 2000), Judge Whatley described how section 768.79, Florida Statutes (1997), creates an uneven playing field between the insured and the insurer. See also Tetrault v. Fairchild, 799 So.2d 226 (Fla. 5th DCA 2001) (Harris, J., concurring); Pirelli Armstrong Tire Corp. v. Jensen, 752 So.2d 1275, 1277 (Fla. 2d DCA 2000) (Casanueva, J., concurring in part and dissenting in part). We, too, respectfully suggest that our legislature review the public policy of this important statute and the consequences, either intended or unintended, of applying it in cases such as this one.