## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2015, 9:21 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Mark L. Phillips
La Porte, Indiana

ATTORNEYS FOR APPELLEE

Michael D. Sears
Jacquelyn S. Pillar King
Crist, Sears & Zic, LLP
Munster, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

T.R. Bulger, Inc. and
Thomas R. Bulger,

*Appellants-Defendant,*

v.

Indiana Insurance Company,

*Appellee-Plaintiff*

March 9, 2015

Court of Appeals Case No.
46A03-1405-PL-188

Appeal from the La Porte
Superior Court 3
Honorable Jennifer Koethe,
Judge
Cause No. 46D03-0709-PL-388

**Friedlander, Judge.**

[1] Thomas R. Bulger is the president and owner of T.R. Bulger, Inc. (henceforth, unless otherwise noted, we will collectively refer to Thomas Bulger and his company as "Bulger"). Bulger was in the business of providing heating and air

conditioning services. Between 1999 and 2001, Bulger provided such services at the beach home of Rhys and Sally Mussman. Disputes arose between Bulger and the Mussmans regarding the quality of Bulger's work. This led to the filing of various lawsuits and a demand for arbitration. At all relevant times, Bulger was insured by Indiana Insurance Company (IIC) under two policies of insurance, one a Comprehensive Contractors Policy, and the other a Commercial Umbrella Liability Policy (collectively, the IIC policies). Bulger claimed that from April 2001 to April 2002, it incurred expenses of almost $65,000 in assisting counsel with the defense of the Mussman litigation. Bulger further claimed that pursuant to the IIC policies, it was entitled to reimbursement of those expenses. IIC denied liability under the policies and Bulger sued. The trial court ultimately granted summary judgment in IIC's favor and Bulger appeals, presenting the following restated issues for review:

> 1. Did the trial court err in granting summary judgment in favor of IIC with respect to Bulger's claim for reimbursement under the IIC insurance policies?
>
> 2. Did the trial court abuse its discretion in ruling that Bulger's motion in limine was moot?
>
> 3. Did the trial court err in denying Bulger's motion to strike the affidavit of Lyle Hardman?

We reverse and remand.

At all times relevant to this lawsuit, Bulger was insured by IIC under two policies of insurance. In 2001 the Mussmans sued Bulger for what the Mussmans claimed was defective work performed at their beach home. IIC provided Bulger with a legal defense, and attorney Lyle Hardman of the law firm of

Hunt, Suedhoff and Kalamaros, LLP was ultimately selected to defend the action. To assist him in defending the Mussmans' lawsuits, Hardman requested information and materials from Bulger. In turn, Bulger recorded the time its employees spent in complying with these requests and generated invoices purportedly reflecting the cost to Bulger (hourly rate[1] multiplied by the hours spent gathering the relevant materials and information). Bulger forwarded these invoices to Hardman. Sometimes they were sent at the time they were generated, and sometimes they would be forwarded after several had accumulated. Bulger claimed that from April 2001 to April 2002, it incurred $64,620.35 in expenses in assisting Hardman with the defense of the Mussman lawsuit. According to Bulger, these expenses represent manpower (e.g., wages paid to employees for copying, obtaining documents, stapling, responding to discovery, deposition preparation, and depositions), office supplies, and postage. Bulger claimed that under the IIC policies, it was entitled to reimbursement of these expenses. The claim for reimbursement is premised upon the following supplementary payments provision of both policies:

> 1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> * * * * *
>
> d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

---

[1] Thomas Bulger acknowledged that the hourly rate reflected on the invoices was the rate that would be billed to a customer or client, and was more than the employee in question earned in wages or salary.

*Appellant's Appendix* at 47, 229.

[4] The record is not clear as to precisely when and how it occurred, but at some point Thomas Bulger learned that IIC might not pay the invoices. He did later recall, however, that on or about April 30, 2002, Hardman informed him that IIC was not going to reimburse Bulger for those expenses. According to Thomas Bulger, Hardman stated: "[IIC] will pay somebody to come to your office and make all these copies. They will bring their own printer, they will bring their own paper, they will bring the boxes." *Id.* at 760.

[5] When Bulger learned from Hardman that IIC would likely not pay the invoices, Bulger attempted to contact IIC himself. According to Thomas Bulger, the woman who answered his phone call to IIC "wouldn't even talk to me." *Id.* at 762. Thereafter, IIC refused to reimburse Bulger for the expenses allegedly incurred in assisting Hardman with the defense of the Mussman lawsuit.

[6] On September 7, 2007, Bulger filed the present action, claiming that pursuant to the IIC policies, IIC had a duty to reimburse Bulger for expenses incurred in assisting with the defense of claims made by Mussman, and that IIC breached this duty. Discovery ensued. More than six years later, on August 20, 2013, counsel for Bulger requested the deposition of Sandy Bennett, a former employee of IIC. On September 6, 2013, Bulger requested the deposition of George Bedrava, also a former employee of IIC. On September 24, 2013, IIC's counsel informed Bulger that she had not been able to locate either person:

the last known location for Sandy Bennett was Northern Indiana (perhaps Elkhart/South Bend/Osceola) and then (I think) she went to Florida for winters. George Bedrava is also retired and may be in Illinois. We have attempted to locate them, but have been unsuccessful.

Frankly, the last time we spoke to Sandy Bennett was a couple of years ago, and, at that time, she advised that she had no independent recollection of this case. Even though we have not spoken to Bedrava, as the manager at the time, he likely would have less knowledge than Sandy.

*Id.* at 570.

[7] The following day, counsel for Bulger requested a Trial Rule 30(B)(6) deposition. On October 3, 2013, Bulger's counsel sent a T.R. 30(B)(6) Notice of Deposition for October 15, 2013, which was four days before the close of discovery. The Notice directed IIC to

designate one or more persons as duly authorized and consenting to testify on its behalf regarding the following matters:

1.  All communications between Indiana Insurance and T.R. Bulger, Inc. and/or Thomas Bulger relating to the Mussman litigation matters.

2.  All communications between Hunt Suedoff [sic] law firm and Indiana Insurance relating to Thomas Bulger and/or T.R. Bulger, Inc. regarding the defense of the Bulger defendants.

3.  All reasons why the claims of Thomas Bulger and/or T.R. Bulger, Inc. for reimbursement of expenses incurred during the defense of the Mussman litigation matters were denied and not paid.

4.  All facts upon which Indiana Insurance Company based its denial of coverage for reimbursement of expenses incurred by Thomas Bulger and/or T.R. Bulger, Inc. in the defense of the Mussman litigation matters.

*Id.* at 163. After receiving this notice, IIC's counsel responded as follows:

Please note that neither Ms. Bennett nor Mr. Bedrava are "lost." As I previously advised you, we believe that Ms. Bennett is in the Elkhart/Osceola area, and Mr. Bedrava is in Illinois. Clearly, the fact that we do not have current contact information for these former employees does not render them "unavailable."

Notwithstanding, please allow this correspondence to serve as Indiana Insurance Company's response to the Rule 30(B)(6) Notice, as you referenced in your letter. As to areas (1) and (2), Indiana Insurance Company is unable to produce witnesses that can testify as to these matters. Again, any such information would be contained in the documents you have already received. As to areas (3) and (4), Indiana Insurance Company's position as to the claimed expenses is that the Policy at issue does not provide for reimbursement of these expenses. Further, your contention that Indiana Insurance Company has been aware of this request for "many years" is simply incorrect. Your client has never produced any information as to what these alleged "expenses" relate to and, in fact, testified that the expenses represent his employees' wages in "assisting" with the defense of the litigation. He has no additional information as to these claimed expenses. This is simply insufficient to put Indiana on notice of anything, as your client's evidence is speculative, at best.

*Id.* at 165. Bulger responded that if someone from IIC did not appear for the deposition, Bulger would file a motion in limine to prevent IIC "from introducing any evidence at trial on the areas if [sic] inquiry noted on the deposition notice." *Id.* at 166. On October 14, 2013, counsel for Bulger advised that Bulger would be moving forward with the deposition. The deposition was scheduled the next day, on October 15, 2013. No one from IIC appeared for deposition.

[8] On November 5, 2013, Bulger filed its motion in limine seeking to prohibit IIC from presenting any evidence regarding the areas of inquiry listed in the T.R. 30(B)(6)Notice of Deposition. On November 18, 2013, Bulger filed a motion

for summary judgment. On December 16, 2013, IIC filed a response to Bulger's motion for summary judgment, as well as a summary judgment motion of its own. Among the materials designated by IIC was the affidavit of Hardman, which included the following pertinent statements:

> 2. I, along with the firm of Hunt, Suedhoff, Kalamaros, LLP, represented T.R. Bulger, Inc. and Thomas R. Bulger (collectively "Bulger") in an action entitled *Rhys Mussman, Sally Mussman and Royal Developments, Ltd. v. T.R. Bulger, Inc. and Thomas R. Bulger*, Cause No. 46C01–0103–CP–00092 ("underlying proceeding").
>
> 3. The firm was contacted by Indiana Insurance Company to defend Bulger in the underlying proceeding on March 12, 2001. The first contact made with Bulger by my firm was on March 15, 2001.
>
> 4. While representing Bulger, I did not request that he incur any expenses to assist me with the defense of the underlying litigation.
>
> 5. While representing Bulger, Mr. Bulger did inquire about whether his time and the time of his staff spent on issues raised by the litigation were reimbursable under his insurance policy. He also inquired as to whether copying costs were reimbursable under his policy.
>
> 6. I informed Mr. Bulger that he should read his policy and raise those issues with Indiana Insurance. I do not recall discussing Bulger's inquiries with anyone at Indiana Insurance.
>
> 7. I have no knowledge of any expenses Bulger is not claiming he incurred in assisting me with the defense of the underlying litigation.

*Id.* at 750-51. On December 30, 2013, Bulger filed a motion to strike Hardman's affidavit. On March 20, 2014, the court conducted a hearing on all pending motions and took the matter under advisement.

[9]     On May 1, 2014, the court denied Bulger's motion for summary judgment, granted IIC's motion for summary judgment, and denied Bulger's motion to strike the Hardman affidavit. The court explained in pertinent part:

While no Indiana case has interpreted the policy provision at issue, other jurisdictions have found that the "reasonable expenses incurred at our request" can only mean that the insurer will be liable for authorized expenses over which it had control.

* * * * *

The policies at issue also contain a voluntary payments clause, which provides that the insured will not incur any expense without prior approval except at his own cost. Indiana law provides that an insurer is not liable when an insured breaches a voluntary payment clause by not obtaining the insurer's consent prior to incurring the expense.

Here, there is no evidence that Defendant requested that Plaintiffs incurred [sic] the expenses claimed and, further, Bulger has admitted through his testimony that he did not request consent from the Defendant prior to incurring the expenses. Attorney Hardman also testified in his affidavit that he did not request that Plaintiffs incur any expenses. In light of this evidence and applicable and persuasive law, the Court finds that [IIC] has not breached the policies at issue.

Plaintiffs further claim that the Defendant's failure to speak with Bulger or to attend a Rule 30(B)(6) deposition now requires that this Court deem [IIC's] claims waived or barred by estoppel. There is no evidence of express waiver. The issue is, therefore, whether estoppel or implied waiver may apply. However, Bulger cannot demonstrate prejudice, as his claimed expenses have remained unchanged since April 2002, so these theories are inapplicable.

*Id.* at 13-14 (internal citations to authority omitted).

1.

[10]    Bulger contends the trial court erred in granting summary judgment in favor of IIC with respect to Bulger's claim for reimbursement under the IIC policies. Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact with respect to a particular issue or claim. Ind. Trial Rule 56(C); *Bleeke v. Lemmon*, 6 N.E.3d 907 (Ind. 2014). We review a summary

judgment order *de novo*. *Hughley v. State*, 15 N.E.3d 1000 (Ind. 2014). Considering only the facts supported by evidence designated to the trial court by the parties, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." T.R. 56(C); *see also TP Orthodontics, Inc. v. Kesling*, 15 N.E.3d 985 (Ind. 2014). Where the moving party designates material demonstrating there are no genuine issues of material fact with respect to a particular issue or claim, the burden shifts to the non-moving party to come forward with designated evidence showing the existence of a genuine issue of material fact. *Bleeke v. Lemmon*, 6 N.E.3d 907. Upon review, we will accept as true those facts alleged by the nonmoving party. *Sees v. Bank One, Indiana, N.A.*, 839 N.E.2d 154 (Ind. 2005). "All designated evidence and reasonable inferences must be construed in favor of the non-moving party, and doubts resolved against the moving party." *Bleeke v. Lemmon*, 6 N.E.3d at 917. The appellant bears the burden of demonstrating that the grant of summary judgment was erroneous. *Hughley v. State*, 15 N.E.3d 1000. Finally, we will affirm a grant of summary judgment on any theory supported by the record. *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574 (Ind. 2013).

[11] "The construction of a contract is particularly well-suited for de novo appellate review, because it generally presents questions purely of law." *Id.* at 577. When reviewing an insurance policy, we use the same rules of interpretation that are applied to other contracts. *Justice v. Am. Family Mut. Ins. Co.*, 4 N.E.3d 1171 (Ind. 2014). Prominent among these rules is that clear and unambiguous

language is given its ordinary meaning. *Holiday Hospitality Franchising, Inc. v. AMCO, Ins Co.*, 983 N.E.2d 574. An insurance policy is ambiguous where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Justice v. Am. Family Mut. Ins. Co.*, 4 N.E.3d 1171. The mere fact that parties favor different interpretations does not necessarily mean that the language in question is ambiguous. *Id.* "Additionally, the power to interpret contracts does not extend to changing their terms, and we will not give insurance policies an unreasonable construction to provide added coverage." *Liberty Mut. Ins. Co. v. Mich. Mut. Ins. Co.*, 891 N.E.2d 99, 101-02 (Ind. Ct. App. 2008) (quoting *American Family Ins. Co. v. Globe Am. Cas. Co.* 774 N.E.2d 932, 935 (Ind. Ct. App. 2002), *trans. denied*).

[12] In order to prevail, Bulger must prove that IIC breached its duties under the insurance policy. The provision in question provides that, with respect to any claim against an insured that it investigates or settles, or any lawsuit against one of its insured that IIC defends, IIC will pay "[a]ll reasonable expenses incurred by the insured at our request[.]" *Appellant's Appendix* at 47, 229. Bulger contends that the criteria set out in this provision were satisfied and therefore that IIC was obligated to pay the expenses incurred by Bulger in assisting Attorney Hardman in defending the Mussman lawsuit. As reflected in the language of the provision, the two criteria are that the expenses must be "reasonable", and that they were incurred at IIC's request. IIC contends that neither condition was met, while Bulger contends that both were. We begin

with the claim that the expenses incurred by Bulger were "at IIC's request" within the meaning of the IIC policies.

[13]     We can find no Indiana case that interprets this provision.  We note, however, that in *Mikel v. Am. Ambassador Cas. Co.*, 644 N.E.2d 168 (Ind. Ct. App. 1994), *trans. denied*, this court addressed the meaning of "request" in an insurance policy.  In that case, the provision in question provided: "in addition to our limit of liability, we will pay on behalf of a covered person: … 5.  Other reasonable expenses incurred at our request." *Id.* at 170.  The court determined that "request" in that context meant "to ask for, not to compel through legal action." *Id.* (quoting *Gohn v. Akron School*, 562 N.E.2d 1291, 1292 (Ind. Ct. App. 1990)).  This definition does little to resolve the current dilemma.  The *Mikel* court determined that the insurer did not ask the insured to incur attorney fees when it denied coverage.  Further, the court concluded that although the insured's only recourse after the insurer denied coverage was to file suit, the denial of coverage was not tantamount to a request that the insured incur attorney fees. *Mikel v. Am. Ambassador Cas. Co.*, 644 N.E.2d 168.  In other words, the court was not inclined to view a decision on the part of the insurer that would lead inevitably to the expenditure of attorney fees on the part of the insured as constituting a request that the insured incur such fees.  Bulger contends that IIC chose Hardman's law firm to represent Bulger, and that in so doing, that attorney – Hardman – became the agents of IIC.  Therefore, the argument goes, when Hardman requested documents or information from Bulger or Bulger personnel, it was the same as IIC requesting it.

[14]     As indicated, no Indiana case has yet decided the meaning of this provision, or of a provision substantially similar to it.  Our research reveals, however, that courts in at least two other states have decided the question, and the decisions arguably fall on either side of the issue.  In *Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*, 864 So. 2d 1126 (Fla. Dist. Ct. App. 2003), an insured brought an action against its liability insurer to recover attorney fees and costs incurred after the insurer allegedly breached the duty to defend.  In conjunction with this action, the insured filed a declaratory judgment action seeking a ruling that the insurer had a duty to defend.  During the pendency of these actions, the insurer was declared insolvent and Florida Insurance Guaranty Association, Inc. (FIGA) was statutorily substituted as its successor in interest in the declaratory judgment action.  The trial court conducted a hearing regarding the insured's assertion that the insurer was obligated to pay, as damages, the insured's attorney fees and costs incurred in defending the underlying action.  The trial court found in favor of the insured and FIGA appealed.

[15]     Upon appeal, the appellate court agreed as an initial matter that the insurer was legally responsible for attorney fees and costs that the insured incurred in defending the underlying action by the third party.  The court further determined, however, that the award of attorney fees and costs "is not 'within the coverage' of the policy." *Id.*   In so holding, the court noted that "the only

possible source of coverage [was] the 'supplemental payments' provision of [the insured's] policies with [the insurer]." *Id.* The court described those provisions as follows: "[T]he provisions provide that [the insurer] will pay all reasonable expenses incurred by the insured *at [the insurer's request]*". *Id.* (emphasis in original). This provision is substantially similar to the provision in the IIC policies at issue in the present case. The appellate court analyzed the liability of the original insurer, as well as FIGA, under this provision, as follows:

> In addition, the provisions provide that Reliance will pay all reasonable expenses incurred by the insured *at Reliance's request.* This court has held that this latter portion of the supplementary payments provision means that the insurer will pay for "expenses that it had authorized and over which it had control." *Steele v. Kinsey,* 801 So.2d 297, 299 (Fla. 2d DCA 2001). Thus, if the insurer has not expressly authorized the insured to incur the expense, the expense is not covered under the policy. *Id.* "The words at issue here, 'reasonable expenses incurred at our request,' can only mean that the insurer must request the product or service that incurs the expense." *Id.* at 300.

*Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*, 864 So. 2d at 1130 (emphasis in original).

[16]    For our purposes, the import of the court's treatment of this provision, according to IIC, is its determination that "reasonable expenses incurred at our request" is interpreted to require explicit authorization for expenses over which the insurer had control. IIC contends that this holding dovetails with this court's holding in *Mikel*, which focused upon the meaning of the term "request" under a supplemental payments provision in an insurance policy. The issue in *Mikel* was framed thus: "[W]hether an insured is entitled to recover attorney's

fees incurred in a declaratory judgment action brought by the insured to establish coverage where (1) the insured prevails in the coverage dispute and (2) the policy states that the insurer will pay all reasonable expenses "incurred at our request." *Id*. at 169. With respect to the second question, the court concluded that the insured is entitled to recover attorney fees under this provision only in cases where it could prove that the insurer denied coverage in bad faith. In so holding, the court determined that "request" in this context means "to ask for, not to compel through legal action." *Id*. at 170 (quoting *Gohn v. Akron School*, 562 N.E.2d at 1292). The court concluded that American Ambassador did not request that Mikel file his declaratory judgment action, and "it follows that American Amassador did not request that he incur attorney's fees in prosecuting the action." *Id.* 172.

[17]  Synthesizing the holdings in *Mikel* and *Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*, IIC contends that, as was the case with the insurers in *Mikel* and *Florida Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.*, IIC did not affirmatively request that Bulger incur expenses as a direct result of assisting with defending the underlying Mussman lawsuit. Accordingly, it asserts that the trial court did not err in granting summary judgment in IIC's favor. We reject this argument and the reasoning upon which it is based, and adopt instead the reasoning espoused in *Regis Radio Corp. v. Am. Emp. Ins. Co.*, 30 Misc. 2d 341, 343, 214 N.Y.S.2d 976 (Sup. Ct. 1961) when confronted with a similar policy provision and substantially the same issue.

[18]     In *Regis Radio Corp. v. Am. Emp. Ins. Co.*, the insured sought to recover from the insurer expenses allegedly incurred in connection with the defense of an action for copyright infringement and unfair competition instituted against the insured by Warner Brothers Pictures, Inc. Briefly, Warner Bros. instituted an action against the insured for alleged copyright infringement and unfair competition arising from broadcast of the "Adventures of Sam Spade" programs. Pursuant to a policy of insurance, the insurer undertook the defense of this action and retained a California law firm to represent the insured. The insured contended that at the request of this California firm, it incurred traveling and other expenses in the amount of almost $8000 in connection with the defense of the Warner Brothers action. The insured sought reimbursement under a policy provision that stated: "The Insured shall cooperate with the Company and, upon the Company's request shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits; *and the Company shall reimburse the Insured for expenses, … incurred at the Company's request.*" *Id.* at 979 (emphasis in original). The insurer denied liability under the provision in question, contending that the California firm "had no authority to empower [the insured] to incur expenses in connection with such lawsuit." *Id.* at 978. The court rejected this argument on two bases. First, the court noted that, generally, "unless *specifically* ordered to the contrary by the person retaining him … an attorney charged with the legal and moral duty to prosecute or defend an action to the best of his ability has the implied power and authority to make and authorize such reasonable expenditures as the diligent prosecution or defense of

the lawsuit may require." *Id.* at 978 (emphasis in original). Second, in addition to this implied power, specific provisions of the insurance policy required the insured to cooperate with the insurer and its designated counsel in defense of the Warner Brothers lawsuit.

[19] Essentially, the court reasoned that the insured had a duty to cooperate with the insurer in defending against lawsuits implicating the insurance policy. Such duty included the duty to cooperate with counsel appointed by the insurer to defend the action. Thus, the expenses incurred by the insured at the behest of the insurer-appointed counsel were incurred "at the Company's request", within the meaning of the policy provision in question. *Id.* In effect, the court held that under these circumstances, the insurer-appointed attorney has the implied power to authorize, on behalf of the insurer, requests that the insured incur reimbursable expenditures.

[20] In the present case, the IIC policies required Bulger to "cooperate with [IIC] in the investigation or settlement of the claim or defense against the 'suit'[.]" *Appellant's Appendix* at 49, 231. The Mussman litigation was such a lawsuit, thus triggering Bulger's duty to assist. IIC appointed Hardman as legal counsel to defend against the Mussmans' lawsuit. Hardman requested information and materials from Bulger for use in defending against the Mussman litigation. Bulger complied with those requests, presumably incurring expenses in doing so. We are persuaded by the reasoning in *Regis Radio Corp. v. Am. Emp. Ins. Co.* that under these circumstances, IIC impliedly authorized the requests made of Bulger by Hardman, within the meaning of the policy provisions in question.

Therefore, the trial court erred in holding that Bulger was not entitled to reimbursement on grounds that the activities giving rise to the reimbursement expenses did not come at IIC's request.

[21] Having determined that the trial court erred in holding that IIC did not "request" the expenses incurred by Bulger within the meaning of the insurance policies, we note that there was a second condition for reimbursement stated in the policy, i.e., that the reimbursable expenses must be "reasonable." To that end, IIC contends that Bulger failed to establish via the evidence designated in conjunction with its motion for summary judgment that the expenses it claims are reimbursable were, in fact, reasonable. Because this issue will arise upon remand, we pause here to make a few observations about this condition of coverage. An insurer has a right to challenge the nature and reasonableness of defense expenses that the insured claims to have incurred. *Emp'rs Ins. of Wausau v. Recticel Foam Corp.*, 716 N.E.2d 1015 (Ind. Ct. App. 1999), *trans. denied*. Moreover, the insured bears the burden of proof in establishing that it has satisfied the conditions that render it entitled to coverage under an insurance policy. *See PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705, 727 (Ind. Ct. App. 2004), *trans. denied*.

[22] As indicated previously, Bulger presented invoices to Hardman that ostensibly were generated as a result of efforts expended by Bulger to comply with the requests of Hardman (and thus IIC) for information and materials related to the Mussman lawsuit. Those invoices represented the only documentary evidence detailing the grounds for Bulger's request for reimbursement. At a deposition,

Thomas Bulger was questioned about the services reflected on those invoices. The following excerpt is representative of his explanation of those records:

Q. And based on [one of the invoices that Bulger submitted], what services were performed that were performed at the request of Lyle Hardman and his firm?

A. I can't tell you what services. I can only tell you man hours, and anything that is billed on here would be the person. If it's man hours, it would be the person's name, the pay period that they put their hours down, and how many hours it was.

Q. Okay.

A. I can't tell you what they did. I don't remember what they did.

Q. So that whole group exhibit, because I mean we're talking at least what, 40 something pages?

A. It's every person that ever worked on that job for every hour they ever worked, and every nut and bolt that went into the job, that's correct.

Q. And here's my question, Mr. Bulger. Those backup documents are only going to tell you the person that performed the work and the amount of hours that they allege that they performed –

A. Uh-huh.

Q. – in responding to Lyle's request or his firm's request and the amount that you pay them, correct?

A. Yeah. It's going to capture all of the T.R. Bulger expenses assigned to that job number.

Q. But it's not, for example, let's say Susie Smith did some of the work. It's not going to say Susie Smith spent eight hours copying?

A. No. It will just say Susie Smith, eight hours. Not copying, that's correct.

Q. So those are the backup documents that you have; they delineate the employee, the amount of hours the employee worked, and any sort of expenses relative to copying or postage?

A. Yeah, whatever we find. I just can't tell you what those items will be until we see them.

Q. And then are the amounts represented on this invoice the amount that you would bill a customer for the employee's services, or the amount you actually paid the employee for its services; do you see the difference? And if you need to look through those backup documents to –

A. No, it won't tell me. I think that this is – I know that it covers part of my cost. I don't know if it picks up FUTA, SUTA, FICA and all that. I don't remember if it does.

Q. Okay.

A. But it will pick up their wage rate that we got built into the program. Each employee that paid so much, and however that was distributed on our accounting system.

Q. So, for example, if an employee made, and I'm going to throw out a number, ten dollars an hour, and the employee worked forty hours responding to a request it would be $400 represented on this invoice is that what you're telling me?

A. It could be more.

*Appellant's Appendix* at 338. Thus, according to Thomas Bulger, the invoices reflected the name of the person who performed the allegedly reimbursable tasks, and the number of hours worked by that person in a given pay period. In other words, he acknowledged that the invoices did not reflect what services those employees allegedly performed. He also acknowledged that his records did not reflect the specific requests made by Hardman to which the work reflected on the invoices, such as they were, allegedly corresponded. Finally, he acknowledged that he would have billed IIC at an hourly rate equivalent to that employee's labor rate with respect to the Mussman job. He further acknowledged that this rate would be more than the hourly rate that Bulger actually paid those employees.

[23] Upon remand, the trial court will ultimately be required to determine whether the amount requested by Bulger is reasonable and, if not, what a reasonable amount would be. Our review of the evidence before the court at the summary judgment stage on this question reflects that Bulger's designated evidence failed to adequately establish the reasonableness of the amount Bulger requested, at least based upon that designated evidence. The lack of specificity concerning the nature of the work reflected in those invoices is problematic. Also, it appears that Bulger charged IIC an hourly rate for the employees' time spent allegedly complying with Hardman's requests that exceeded the amount of those employees' actual pay. "[T]he measure of damages in a contract action is limited to those actually suffered as a result of the breach which are reasonably assumed to have been within the contemplation of the parties at the time the contract was formed." *Erie Ins. Co. v. Hickman by Smith*, 622 N.E.2d 515, 519 (Ind. 1993). It seems clear that this aspect of the measure of damages would consist of what Bulger actually paid the employee in question for complying with Hardman's requests, not the hourly rate at which it would have billed that employee's time had the work been performed for the Mussmans in furtherance of Bulger's business. In the final analysis, these are evidentiary matters that the parties will have the opportunity to develop more fully when this litigation moves beyond the summary judgment phase.

## 2. & 3.

[24] Bulger's second and third issues stem ultimately from IIC's refusal to participate in the T.R. 30(B)(6) deposition. Recall that Bulger sent IIC a request for

deposition pursuant to T.R. 30(B)(6). Pursuant to this request, Bulger directed IIC to designate a person or persons authorized to testify on IIC's behalf regarding (1) communication between IIC and Bulger relating to the Mussman litigation, (2) communication between IIC and Hardman's law firm regarding the legal defense of Bulger concerning the Mussman litigation, (3) the reasons why Bulger's claims for reimbursement were denied, and (4) the facts upon which IIC based its denial of coverage for expenses for reimbursement submitted by Bulger. As a result of IIC's refusal to designate a person to participate in the T.R. 30(B)(6) deposition, Bulger submitted a motion in limine, seeking to prevent IIC from presenting evidence on the four subject areas identified in the T.R. 30(B)(6) notice. As a second issue, Bulger appeals the denial of that motion in limine.

Also as a result of IIC's refusal to participate in the T.R. 30(B)(6) deposition, Bulger submitted a motion asking the court to strike an affidavit submitted by Hardman in which Hardman averred that (1) he did not ask Bulger to incur expenses to assist Hardman with the defense of the Mussman litigation, (2) when asked by Bulger about whether certain expenses were reimbursable under his insurance policy, Hardman informed Thomas Bulger that he should read his policy and ask IIC, and (3) he had no knowledge of any expenses Bulger ultimately claimed that he incurred in assisting Hardman with the defense of the Mussman litigation. Again based upon IIC's failure to participate in the T.R. 30(B)(6) deposition, Bulger petitioned the trial court to strike the Hardman

affidavit. The third issue presented by Bulger is the trial court's denial of the motion to strike.

[26] These issues stem from IIC's failure to participate in the T.R. 30(B)(6) deposition, which in turn would have been relevant for the purpose of determining whether Bulger was entitled to reimbursement under the IIC insurance policies. More specifically, that deposition presumably would have focused on the "request" element of the coverage question. Having determined that IIC, through Hardman, did request Bulger's assistance within the meaning of the insurance policies, we need not address these issues. All that remains is the reasonableness of the requested reimbursement.

[27] Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

Kirsch, J., and Crone, J., concur.