IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

NEW HAMPSHIRE INDEMNITY
COMPANY,

Appellant,

v.

JOHN GRAY, DAMIL BELIZAIRE
& DALINE BELIZAIRE, jointly &
severally,

Appellees.

_____/

Opinion filed October 8, 2015.

An appeal from the Circuit Court for Duval County.
W. Gregg McCaulie, Judge.

Shelley H. Leinicke of Wicker, Smith, O'Hara, McCoy & Ford, P.A.,
Ft. Lauderdale; Michael C. Clarke of Kubicki Draper, P.A., Tampa, for Appellant.

Brandon G. Cathey and Stephanie M. Miles of Swope, Rodante P.A., Tampa, for
Appellee John Gray.

THOMAS, J.

Appellant, New Hampshire Indemnity Company (NHIC), appeals a final

judgment for costs imposed jointly and severally with its insured, Damil Belizaire.

NHIC raises both procedural and substantive arguments against being joined in this

judgment, contending:  1) NHIC was improperly joined because Appellee failed to

comply with the statutory service provision found within section 627.4136(4), Florida Statutes; 2) the court failed to "articulate any basis" for adding NHIC to the judgment or making any findings that the policy covered Appellee's taxable costs; and 3) the policy does not provide such coverage, rendering the judgment "substantively improper." As explained below, we reject each of these arguments and affirm.

## Factual Background

Mr. Belizaire was involved in a motor vehicle collision resulting in a catastrophic injury to Appellee, John Gray, who in turn sued Belizaire for damages. NHIC provided a defense to Belizaire under the subject insurance policy and the matter went to trial, resulting in a jury verdict of $2.3 million in damages, in Appellee's favor.

The trial court entered a final judgment against Belizaire, reserving jurisdiction to award costs. Appellee then moved to tax costs against Belizaire, serving the motion on his attorneys, who represented him at the cost hearing. The trial court granted the motion in December 2013, and awarded costs of more than $127,000. Approximately one week later, Appellee filed a motion asking the court to enter a final judgment for the taxable costs awarded and to join NHIC in the judgment. Appellee served the motion, not on NHIC, but on Belizaire's NHIC-retained attorneys. Ten days later, Appellee filed another motion to tax costs

2

related to litigation that ensued after Belizaire objected to aspects of Appellee's prior cost motion. This, too, he served on Belizaire's attorneys.

In June 2014, NHIC, through independent counsel, filed a "Memorandum in Response and Opposition" to Appellee's motion. NHIC asserted that Appellee failed to comply with section 627.4136(4), Florida Statutes, by not serving NHIC with the joinder motion by certified mail. NHIC also argued that it could not be joined as a party because it was not responsible for Appellee's costs under the policy's terms.

Appellee filed a "Supplemental Certificate of Service" dated June 26, 2014 (the same day NHIC filed its memorandum in opposition to joinder), indicating that a copy of Appellee's motion was furnished by email to the attorneys who filed the opposition memorandum, and by certified mail to "AIG Insurance."[1] Appellee filed a copy of this supplemental certificate in the trial court on September 18, 2014. The court held a hearing on the matter four days later at which counsel for NHIC, Belizaire, and Appellee appeared. NHIC argued against joinder on the same grounds asserted in its memorandum in opposition.

Appellee's counsel expressed her appreciation for NHIC's memorandum, because it alerted her to the procedural defect and allowed her time to rectify it, which she asserted was achieved by filing a copy of the motion and a supplemental

---

[1] AIG is the company listed on the cover page of the policy at issue and is apparently NHIC's parent company.

3

certificate of service via certified mail before the hearing. NHIC's counsel indicated that he had not received either document and asserted that it was insufficient to serve a motion on a Thursday before a Monday hearing. Appellee responded that the statute does not provide when a joinder motion must be served, only how, and that the carrier was represented by counsel and had been for the entirety of the litigation. The court took the matter under advisement and ultimately entered the judgment on appeal that adjudicated NHIC jointly and severally liable for costs in excess of $135,000.

## Legal Analysis

### I. NHIC's Procedural Challenges

NHIC asserts two procedural grounds against the trial court's judgment: 1) NHIC was improperly joined in the judgment, because Appellee failed to comply with the statutory service provision found within section 627.4136(4), Florida Statutes; and 2) the court erred by failing to "articulate any basis" for adding NHIC to the judgment and not making any finding that the policy covered Appellee's taxable costs.

We address the second argument first, which we find unpreserved. NHIC argues that the judgment is defective, because it does not contain sufficient findings to support the court's joinder of NHIC. Even if correct, any such defect necessarily first appeared on the face of the judgment itself. Because NHIC did

4

not file a motion for rehearing to alert the court to the alleged defect, NHIC's arguments in this regard are unpreserved for appellate review. See, e.g., Pensacola Beach Pier, Inc. v. King, 66 So. 3d 321, 325-26 (Fla. 1st DCA 2011) (holding, where "Appellants did not file a motion for rehearing asking the court to make a finding regarding [certain] statements," they failed to preserve the argument). See also Williamson v. Cowan, 49 So. 3d 867 (Fla. 5th DCA 2010) (holding, "[b]ecause Appellant never challenged the adequacy of the findings in a motion for rehearing . . . the issue was not properly preserved for appellate review."). We state once again: When errors appear for the first time in a judgment, the party harmed by the error must assert its grounds in a motion for rehearing to allow the trial court an opportunity to rectify the error.

Even if preserved, however, the judgment was not defective for failing to include the findings NHIC asserts were necessary. First, there was no dispute below that Appellee obtained a verdict against Belizaire, or that Belizaire was an insured under the policy, something NHIC acknowledged in its reply brief. Furthermore, both parties relied on diametrically opposed interpretations of the same policy provision in support of their respective positions on the substantive issue of joinder based, as discussed below, on conflicting district court opinions. Therefore, by granting Appellee's joinder motion, it is apparent that the court was persuaded by the authority on which Appellee relied.

5

Turning to NHIC's first procedural argument, section 627.4136(4) provides, in relevant part:

> (4) At the time a judgment is entered . . . a liability insurer may be joined as a party defendant for the purposes of entering final judgment . . . by the motion of any party . . . . A copy of the motion to join the insurer shall be served on the insurer by certified mail. . . .

In GEICO General Insurance Company v. Williams, 111 So. 3d 240, 246-47 (Fla. 4th DCA 2013), the court explained that a carrier is timely added as a party at the time a final judgment for fees and costs is entered, citing Ulrich v. Eaton Vance Distributors, Inc., 764 So. 2d 731, 733 (Fla. 2d DCA 2000), and section 627.4136, Florida Statutes. We agree with the analysis of the Fourth District in Williams. A judgment on the merits of a suit is not final for purposes of determining the collateral issues of attorney's fees and litigation costs until those issues are resolved.

Here, although it is undisputed that Appellee did not serve a copy of the motion directly on NHIC at the time he first filed the motion in January 2014, Appellee asserts that he complied with this provision by sending a supplemental certificate in which he averred that he sent a copy of the motion via certified mail on the same day NHIC filed its memorandum in opposition to the motion. Appellee also argues that the statute requires the insurer to be joined by sending the insurer a copy of the motion via certified mail at or before the time the final judgment to which it is joined is entered, which he did. NHIC argues that

6

Appellee's last-minute amended certificate of service of the motion never reached its attorneys before the hearing, and that there still is no evidence that the motion was actually mailed by certified mail, because the card indicating as much is not in the record.

NHIC relies on ACE American Insurance Company v. HCP IIII of Bradenton, Inc., 913 So. 2d 1280 (Fla. 2d DCA 2005), in support of its position that failure to "timely" serve NHIC via certified mail is fatal to the judgment at issue. This reliance is misplaced. In that case, ACE and two other carriers tendered checks to satisfy a judgment against their insured, but the plaintiff filed a motion asserting the amounts paid were deficient and sought an order directing ACE pay the deficiency. Id. at 1281. The trial court entered such an order and the appellate court reversed, holding that "[t]he trial court had no in personam jurisdiction over ACE because it is undisputed that ACE was never served and was never a party to the suit." Id. Critically, the court explained: "Although, pursuant to section 627.4136(4), Florida Statutes (2004), a liability carrier may be joined at or before the time judgment is entered against its insured, there was no such joinder in the present case." Id.

In ACE, therefore, unlike here, the plaintiff made no attempt to join the carrier at or before the time the plaintiff asked the court for an order instructing the carrier to pay the alleged deficiency at issue; thus, the carrier was not a party

7

against whom the court could issue an order to enforce the judgment. It was for that reason that the court lacked *in personam* jurisdiction.

Here, however, Appellee did move to join NHIC, and did so before the judgment on costs was entered. Additionally, there is no dispute that NHIC received a copy of Appellee's joinder motion before the hearing, as indicated by the fact that it retained separate counsel, who filed a memorandum in opposition to joinder. NHIC was also represented by counsel at the hearing on that motion and did not seek a continuance or otherwise indicate more time was needed to prepare a defense to the legal question of whether NHIC could properly be joined under the statute. Furthermore, the arguments made by counsel were identical to those raised in the opposition memorandum. Under these circumstances, even if NHIC did not receive the certified mail copy of the motion before the hearing, it did not suffer any prejudice as a result, and the court did not abuse its discretion by not dismissing the joinder motion and ruling on the merits.

This leaves the substantive question of whether the insurance policy at issue affords coverage for the taxable litigation costs included in the judgment at issue and, thus, whether joining NHIC in the judgment was proper.

## II. NHIC's Coverage Challenge

The "Supplementary Payments" section of the policy at issue provides that, in addition to liability coverage, NHIC would "pay on behalf of an *Insured* funds

8

toward the cost of a bail bond"; "[p]remiums on appeal bonds and bonds to release attachments in any lawsuit we defend"; "[i]nterest accruing after a judgment is entered in any lawsuit we defend" (with a proviso that this duty ends when the carrier offers "to pay that part of the judgment that does not exceed our limit of liability"); limited funds for an insured's loss of wages or salary "because of attendance at hearings or trials at *our* request"; and, finally, "Other reasonable expenses incurred at *our* request." (Emphasis in original.) Taken together, these all fall under the category of "litigation expenses." It is the "other reasonable expenses" provision upon which both parties rely for their respective positions as to whether NHIC can be added to a judgment for taxable costs awarded to a prevailing plaintiff and taxed to NHIC's insured defendant, with the phrase "at our expense" being the critical language at issue. The parties' mutual reliance on the same provision to reach opposite outcomes is based on the conflicting opinions of Florida Insurance Guaranty Association, Inc. v. Johnson, 654 So. 2d 239 (Fla. 4th DCA 1995) (relied upon by Appellee), and Steele v. Kinsey, 801 So. 2d 297 (Fla. 2d DCA 2001) (relied upon by NHIC).

In Johnson, Florida Insurance Guaranty Association, Inc. (FIGA), standing in the place of the insolvent insurer, contested a cost award in favor of the prevailing plaintiff as being in excess of the underlying insurance policy's limits.

9

654 So. 2d at 239.  FIGA relied on that portion of the policy defining the limits of liability coverage.  <u>Id.</u> at 240.  The plaintiff argued:

> the 'costs' which it seeks are, in fact, *consistent* with the terms of the *existing* policy. The [plaintiff] contends that the 'costs' are covered within the 'Supplementary Payments' provision of the insolvent insured's policy, which provides, in pertinent part: '[i]n addition to our limit of liability, we will pay on behalf of a covered person . . . [o]ther reasonable *expenses* incurred at our request.'

<u>Id.</u> (emphasis in original).  The plaintiff argued that the "request" referred to in this provision "took the form of [the insurer's] *election to litigate*" the matter, and contended that, "having thus *chosen* to litigate, the taxable costs entered against the insured were, therefore, expenses covered under the terms of the policy.  The award of taxable costs in this case are reasonable expenses incurred by the plaintiff, and charged to the defendant, as a result of the litigation of the action." <u>Id.</u> (emphasis in original).

The Fourth District agreed, holding that FIGA "made the decision to defend this action," and, because the carrier "had sole discretion regarding the decision to defend the lawsuit, it is obvious that the expenses incurred by the plaintiff in litigating the action were as a result of the insurance company's choice not to settle the action. Thus, those expenses were incurred at the insurer's request."[2]  <u>Id.</u>

---

[2] The <u>Johnson</u> court also noted that the plaintiff argued that the policy provision at issue was unambiguous but that, if the court disagreed and it was in fact ambiguous, then long-standing Florida decisional law provided that "any uncertainty must be construed against the insurer and in favor of the insured.

In <u>Kinsey</u>, the tortfeasor was insured under a policy that,

> in common with most auto liability policies, gave the insurer exclusive control over settling or litigating any claim against the insured for damages covered by the policy. The policy also had a supplementary payments provision stating that the insurer would pay certain costs relating to litigation, e.g., bail bonds and post-judgment interest, including '[o]ther reasonable expenses incurred at our request.'

801 So. 2d at 298. Kinsey, the insured, was involved in an accident causing injury to Steele and, during the course of the litigation and pursuant to the offer of judgment statute, Steele offered to settle the matter for the policy's $10,000 limit. This offer was refused. <u>Id.</u> at 299. At one point, Kinsey and the tortfeasor's insurer "entered into a joint stipulation and settlement agreement" pursuant to which the trial court was to decide "the insurer's liability for bad faith before adjudicating the underlying tort action. The parties' stipulation also contemplated that the trial court would decide whether [the policy] covered, by virtue of the above-quoted language from the supplementary payments provision, any section 789.79 attorney's fees and costs which she might owe Mr. Steele." <u>Id.</u> The trial court "concluded that the policy provided no such coverage," and Kinsey appealed. <u>Id.</u>

---

Thus, the 'Supplementary Payments' provisions obviously have the intent of extending coverage and, therefore, must be construed liberally in favor of the insured. Accordingly, we affirm the trial court's judgment in this regard." 654 So. 2d at 240 (citations omitted).

11

The Kinsey court held that "the language 'expenses incurred at our request' is clear on its face and should be applied according to its generally understood meaning," and recognized that its "resolution of this issue puts us in conflict with the Fourth District's opinion in *Johnson*."  Id.  The Kinsey court explained:

> The common meaning of "request" is "the act of asking, or expressing a desire, for something; solicitation or petition." *Webster's New World College Dictionary* 1218 (4th ed. 2001). The legal meaning of the word is "[a]n asking or petition. The expression of a desire to some person for something to be granted or done, particularly for the payment of a debt or performance of a contract." *Black's Law Dictionary* 1172 (5th ed. 1979). Both of these commonly understood definitions reinforce the clear use of the term within the context of the policy-that the insurer intended to pay for expenses that it had authorized and over which it had control, such as the selection of a service or product of known value and cost.

Id.  The Kinsey court certified conflict with Johnson.

Although the Florida Supreme Court accepted jurisdiction, it later decided: "Upon reflection and further consideration, we now conclude that review was improvidently granted. Accordingly, this review proceeding is dismissed."  Steele v. Kinsey, 840 So. 2d 1023 (Fla. 2003).

In an opinion issued two years later, however, the supreme court held that FIGA was bound by the terms of an insolvent insurer's supplementary payments provisions and, thus, "liable for interest on judgments entered to the same extent as [the insurer] would have been liable," even if this resulted in payments in excess of

12

the policy's liability limits.  Jones v. Fla. Ins. Guar. Ass'n, Inc., 908 So. 2d 435, 454 (Fla. 2005).  The court explained:

> Indeed, courts in Florida have assessed costs in excess of limits of liability against FIGA through supplementary payment provisions. In *Johnson,* the district court held FIGA responsible for court costs in excess of the underlying policy's liability limits.  The court applied the court costs through a supplementary payment provision that obligated the insolvent insurer to pay on behalf of a covered person reasonable expenses incurred in the litigation.  The district court reasoned that the insurer had decided against settling the claim and that the resulting litigation expenses were therefore a responsibility to be covered.

Id. at 454-55 (citations omitted).  The court then observed:

> In *Steele v. Kinsey*, the Second District reached the opposite conclusion, not on the basis that fees and costs in excess of policy limits could not be assessed against FIGA through supplementary payment provisions, but based on its conclusion that the language promising payment of expenses incurred at the insurer's request could not be reasonably interpreted to include litigation expenses.

Id. at 455 (citation omitted).  The court noted in a footnote its prior acceptance of Kinsey and subsequent decision to discharge jurisdiction.  Id. at n.7.

The remainder of Jones addressed the issue of FIGA's responsibility for judgment interest which, the court explained, existed due to the FIGA Act's purpose "to avoid financial loss to claimants or policyholders due to the insolvency of the insurer. *See* § 631.51(1)."  Jones, 908 So. 2d at 454.  The court also emphasized, however, that the insured's predicament was due to "FIGA's abdication of its statutory and contractual duties, one of which was a

13

supplementary payment coverage obligation to pay interest on judgments entered against the insured." Id. at 455.

We cannot speculate why the supreme court opted to discharge its conflict jurisdiction in Kinsey, but as we read Jones, Johnson is still good law and we agree with the conclusion in that case. In our view, the court in Kinsey too narrowly interpreted the word "request": "The common meaning of 'request' is 'the act of asking, or *expressing a desire*, *for something*; solicitation or petition.'" Kinsey, 801 So. 2d at 299 (emphasis added). The court also noted the legal definition of the word, explaining that it means "'[t]he expression of a desire to some person for something to be granted or done, . . . .'" Id.

As both the Johnson and Kinsey courts acknowledge, under insurance policies such as the one here, insurers enjoy the sole right to settle or litigate claims against their insureds; therefore, choosing to litigate is no different than a request or "expressing a desire" to do so. Any such expression, or request, necessarily encompasses incurring litigation costs, which may mean not only the insurer's litigation costs, but also those incurred by the opposing party should that party prevail. It is the insurer's choice to litigate – a decision only it can make – that results in these costs being incurred; thus, "those expenses [are] incurred at the insurer's request." Johnson, 654 So. 2d at 240.

14

Insurers have a statutory right not to be named as a defendant in an action brought by a person claiming damages as a result of an insured's negligence unless "such person shall first obtain a settlement or verdict against a person who is an insured . . . for a cause of action which is covered by such policy." § 627.4136(1), Fla. Stat. Insurers enjoy this right so as to avoid the prejudice likely to occur if a jury is aware of an insurance company's interest in the case. As interpreted by the court in <u>Kinsey</u>, however, pursuant to policy language such as that here, when an insurer opts to litigate "on behalf" of its insured defendant, it not only avoids being named as a defendant, it is also cloaked with immunity from paying the prevailing plaintiff's costs resulting from the insurer's choice to litigate. These costs are then imposed on the insured, who had no say in the decision to litigate. In our view, this is an abuse of an insurer's right under section 627.4136(1). Indeed, under the court's interpretation in <u>Kinsey</u>, an insurer that chooses litigation over settlement can be held liable for a prevailing plaintiff's litigation costs only if the insurer had specifically requested the plaintiff to incur those costs – an unlikely scenario, to say the least.

The Fourth District's interpretation in <u>Johnson</u> is much more consistent with the concern expressed by the supreme court in <u>Jones</u>, in which it noted that the insured was in this predicament precisely *because* of the insurer's actions, and not the insured's actions. It is also particularly compelling when, as in this case, the

15

taxable costs incurred exceed by ten times the insured's liability limits. Indeed, the Kinsey interpretation of this common insurance policy provision runs counter to the very purpose of buying insurance – to minimize liability exposure – and instead results in an insured actually purchasing greater financial exposure than he may have faced without insurance. This results in an absurd interpretation of the policy provision, in our view, which we must avoid. See, e.g., King v. Bray, 867 So. 2d 1224 (Fla. 5th DCA 2004) ("The courts generally agree that where one interpretation of a contract would be absurd and another would be consistent with reason and probability, the contract should be interpreted in the rational manner."). We find it difficult to conceive that an insured who purchases an automobile liability policy does so with the intent that he is granting the insurer not only the right to decide whether to litigate a claim brought against him, but also to potentially subject the insured to a cost judgment well in excess of his policy limits, solely because the insurer elected to exercise the right to litigate for the *insured's* benefit.

We note, too, that, given that the purpose of the offer of judgment statute, section 768.69, Florida Statutes, which is to discourage excessive or frivolous litigation, the Kinsey court's interpretation of the policy language in question undermines that statutory purpose, because it applies the adverse financial

16

disincentives of the statute to the insured who had no choice in the matter, rather than the insurer who engaged in the meritless litigation.

Conclusion

Based on the foregoing, we AFFIRM the trial court's final judgment adjudicating NHIC jointly and severally liable with its insured for Appellee's taxable litigation costs. We also certify conflict with <u>Steele v. Kinsey</u>, 801 So. 2d 297 (Fla. 2d DCA 2001).

AFFIRMED; CONFLICT CERTIFIED.

WETHERELL and RAY, JJ., CONCUR.

17